**Opinion issued September 1, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-14-00076-CR**

————————————

**KATELYNN ROSE GARZA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 4**
**Brazoria County, Texas**
**Trial Court Case No. 198893**

---

## O P I N I O N

Appellant Katelynn Garza was charged with misdemeanor possession of marijuana. *See* TEX. HEALTH & SAFETY CODE § 481.121(b)(1). A jury found her guilty and imposed a $500 fine as punishment.

In this appeal, Appellant argued that the trial court erred when it denied her request for a jury instruction regarding illegally obtained evidence. *See* TEX. CODE CRIM. PROC. art. 38.23(a). In an opinion dated April 16, 2015, we concluded that the evidence did not demonstrate any material fact dispute implicating the legality of the traffic stop that led to the discovery of marijuana in Appellant's car, and we affirmed the trial court's judgment.

Appellant filed a motion for en banc reconsideration. We withdraw our opinion and judgment issued April 16, 2015, and we issue this opinion and judgment in their stead. Our disposition remains unchanged, but under this court's precedent, Appellant's motion for en banc reconsideration is rendered moot by our withdrawing and reissuing our opinion. *See, e.g.*, *Brookshire Bros. v. Smith*, 176 S.W.3d 30, 14 n.4 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (op. on reh'g).

We affirm.

## Background

Around midnight on December 18, 2012, Pearland Police Officer N. Palomo pulled over a car because he observed that its passenger-side headlamp was not functioning properly. Appellant was driving the car. Palomo walked up to the car, and Appellant stated, "headlights." Palomo said, "yes," to which she replied, "I just

2

got stopped for that in Friendswood." As Palomo spoke with Appellant about the car's headlamp, he smelled the odor of marijuana coming from the car.

Palomo asked Appellant to exit the car, which she did. She admitted that she had been smoking marijuana earlier that evening. A search of the vehicle uncovered several marijuana cigarettes, which Appellant admitted were hers. Palomo arrested her for possession of marijuana.

The State charged Appellant with the misdemeanor offense of possession of marijuana. At the end of trial, Appellant proffered for inclusion in the jury charge an article 38.23 instruction to the effect that evidence should not be considered if it resulted from an illegal traffic stop. Specifically, her counsel questioned whether there was reasonable suspicion to justify the traffic stop, explaining at the charge conference that a fact issue existed about "what condition [her] vehicle was in . . . specifically, the headlamps and the amount of light that they were emitting . . . ."

The court denied the requested charge, and the jury found Appellant guilty. This appeal followed.

## Analysis

In a single issue, Appellant contends that the trial court erred when it denied her request for a jury instruction regarding illegally obtained evidence. She argues that the instruction was warranted by a factual dispute concerning her passenger-side headlamp: whether it was working and the amount of light it produced. We

review a challenge to a jury charge using a two-step process. *See Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). First, we must determine whether the jury charge contained an error. *Id.* at 25. If it did, we then evaluate whether the error was harmful so as to constitute reversible error. *Id.* at 25–26.

"To conduct a traffic stop in compliance with the Fourth Amendment, an officer must have 'reasonable suspicion.'" *E.g.*, *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). An officer has reasonable suspicion when he is aware of "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Id.* (quoting *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)). "The reasonable suspicion standard is wholly objective; the subjective intent of the officer conducting the investigation is irrelevant." *Id*. "The standard requires only 'some minimal level of objective justification" for the stop.'" *Id*. (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)). "Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to de novo review." *Id*. (citing *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012)). "A police officer's reasonable mistake about the facts may yet legitimately justify his own conclusions that there is probable cause to arrest or reasonable

4

suspicion to detain." *Robinson v. State*, 377 S.W.3d 712, 720 (Tex. Crim. App. 2012).

The traffic stop in this appeal occurred at nighttime, when the use of motor-vehicle headlights was required. *See* TEX. TRANSP. CODE § 547.302(a). A motor vehicle must be equipped "with at least two headlamps," and "[a]t least one headlamp shall be mounted on each side of the front of the vehicle." *Id.* § 547.321(a) & (b). A motor-vehicle headlight must produce "an uppermost distribution of light or composite beam that is aimed and emits light sufficient to reveal a person or vehicle at a safe distance of at least 450 feet ahead during all conditions of loading." *Id.* § 547.333(b)(1).[1] The headlight shall produce "a lowermost distribution of light or composite beam that" must be aimed and emit light "sufficient to reveal a person or vehicle at a distance of at least 150 feet ahead." *Id.* § 547.333(b)(1)(A). Generally speaking, a car's headlights at night

---

[1]     Appellant asserts that a lamp identified by section 547.321(a) includes "a combination of" her headlamps, such that one dimly lit headlamp and one brightly lit headlamp together could produce the statutorily required light sufficient to reveal a person or vehicle at a distance of at least 450 feet. The State interprets the Code to require each headlamp to produce independently the statutorily required amount of light. As a result, the State contends that any headlamp emitting less than the required "uppermost distribution of light" violates the Code. Our disposition of this appeal does not depend upon resolving this interpretive dispute. *See* TEX. R. APP. P. 47.1.

must emit light "sufficient to reveal a person or vehicle at a safe distance ahead of the vehicle." *Id*. § 547.333(c).

Article 38.23 of the Code of Criminal Procedure provides that evidence obtained in violation of the Constitution or laws of Texas or the United States shall not be admitted in evidence against the accused in a criminal case. TEX. CODE CRIM. PROC. art. 38.23(a). In any case in which "the legal evidence" raises such an issue, "the jury shall be instructed that if it believes, or has a reasonable doubt" that the evidence was illegally obtained, "then and in such event, the jury shall disregard any such evidence so obtained." *Id.* A defendant must meet three requirements before she is entitled to a jury instruction under article 38.23(a): (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Hamal*, 390 S.W.3d at 306. If other undisputed facts are sufficient to establish the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007); *Rocha v. State*, No. 01-13-00897-CR, 2015 WL 1122279, at *5 (Tex. App.—Houston [1st Dist.] Mar. 12, 2015, pet. ref'd).

"The first requirement for obtaining a jury instruction under Article 38.23, is that the defendant requests an instruction on a specific historical fact or facts." *Madden*, 242 S.W.3d at 511. "The jury decides facts; the judge decides the application of the law to those facts." *Id*. To raise a disputed fact necessary for an article 38.23(a) instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Id*. at 513. Nevertheless, a fact issue about whether evidence was legally obtained may be raised "from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable." *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (quoting *Wilkerson v. State*, 933 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd.)).

At trial, the reason Palomo gave for pulling Appellant over was that her passenger-side headlamp "was not operating." Palomo explained the difference between a headlight and a parking light:

> There's a set of parking lights, when you . . . either click your lights over once—or however your vehicle is set up—turns on the parking lights or just turns on the taillights and the two amber lights on the outside corners of the vehicle without turning on the actual headlights themselves, the white lights that illuminate in front. Secondly is the actual headlight where . . . you . . . turn the dial over one more click and it actually illuminates the headlights which produces the white lights for you to be able to visually see everything at nighttime in front of your vehicle as you would need to.

He explained why he perceived one of the headlights to be malfunctioning:

> I could see that the light—the actual headlight itself was not illuminated; so it was not actually shining out the white light that is

7

necessary for the driver to be able to see everything 90 degrees from the rearview mirror to the right side of the vehicle . . . or passenger's side of the vehicle, correctly. I could see that the parking light was working; it was emitting an orange light going around where the headlight should be but was obviously not . . . the white headlight as it should be.

The testimony was illustrated through the use of video recorded by Palomo's car and three still images captured from the video. While viewing the first still image, admitted as State's Exhibit 1, Palomo compared the depiction of another car to Appellant's car. He showed how the other car's two headlights produced "distinct lighting" that could be seen "on the ground . . . coming from the front of each headlight as that vehicle travels." While viewing the second image, admitted as State's Exhibit 2, he explained what he perceived on the night of the arrest:

> You'll notice that the driver's side light is illuminated, and there is a white aura that's striking the [pavement] directly in front of the driver's side light. The passenger one is notably dimmer, and there is no aura striking directly in front of where this light is. The reason for this is because this one has the headlight that is illuminated and is actually shining out onto the roadway. This one's a parking light that's shining through the housing of the headlight.

Palomo also showed how the same effect could be observed in the video after he had turned his car around to follow Appellant's. A still image captured from the portion of the video where Palomo followed Appellant's car from behind was admitted as State's Exhibit 3. While viewing this evidence, Palomo explained:

> As you can see on the left side of the vehicle, or the driver's side of the vehicle, there's a white light that extends all the way out and also shines all the way up into this area here. Now, that white light is very

visible . . . from our perception of where we're sitting at now. On the passenger's side of the vehicle, there's no white light; there's a slight lighting right here on the side from where the parking light is illuminated at, but obviously absent of the white light that the driver's side would be producing.

When asked why the lack of white light was problematic, Palomo responded:

Because the headlight on the right side of the vehicle, the passenger's side of the vehicle not being illuminated, as you can see how dark all this is, that is going to limit any driver's perception, reaction time to be able to see and react to any kind of road hazard or danger that would be presented on this side of the roadway.

Palomo testified that he conducted a traffic stop based on his perception of an absence of light on the passenger side of Appellant's car. He further explained the traffic stop by stating that "it's necessary for a vehicle to have two headlights to maintain safe driving standards on the roadway at nighttime," "it's a violation not to have the two headlamps," and that he initiated the stop "to notify the driver of it because many drivers do not check their own headlights and taillights and all that and let them know of the violation." When he approached Appellant after pulling her over, she acknowledged, "headlights." He said, "yes," to which she replied, "I just got stopped for that in Friendswood."

Appellant presented evidence, through her father's testimony, disputing Palomo's testimony that the passenger-side headlamp was "not operating." After he viewed State's Exhibit 1, the first of the still images from the patrol car video, Mr. Garza testified without objection that "they look like they're both working"

because "they're both shining and illuminating. You can see the lights there and there on the street." He further testified that he maintained the car and that, since the arrest, he had not changed the passenger-side headlamp because it "hasn't been out."

After viewing the video on cross-examination, Mr. Garza claimed he saw one working headlamp and "a little bit of light" from the passenger-side headlamp. When asked on cross-examination if he saw "two operable headlamps," he answered, "I just see one."[2] But he later reasserted: "To me, in looking at that picture, the light is not out."

The defense also offered into evidence a photograph taken by Mr. Garza days before trial, depicting the car with its lights on but the passenger-side headlamp disconnected. The evidence was offered in an attempt to demonstrate that had the entire passenger-side headlamp been out as Palomo testified, the car would have produced far less light than was depicted in the State's exhibits. Mr. Garza further testified that he had tested the lights and verified that he could

---

[2]    The State contends that there is "no dispute" that the passenger-side headlamp was "not functioning" at the time of Garza's arrest, because Mr. Garza testified on cross-examination that he saw only one "operable" headlamp. To the extent that this testimony suggested that the headlamp was producing no light at all, however, it merely contradicts Mr. Garza's previous testimony and other defense evidence. *See Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004).

see "both lights on" from 1,000 feet away, and that at the time of the test, the car was in the same condition as on the night of the arrest.

The legal justifications for the traffic stop depend on whether Palomo had reasonable suspicion that Appellant had a faulty headlight in violation of the Transportation Code. Reasonable suspicion existed in this case to the extent that Palomo was aware of specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that Appellant's headlights failed to emit light sufficient to reveal a person or vehicle at a safe distance ahead. *See Hamal*, 390 S.W.3d at 306; *see also* TEX. TRANSP. CODE § 547.333(c).

Appellant contends that a fact issue was raised as to reasonable suspicion to justify the traffic stop because Mr. Garza testified that "he believed both headlights were functioning normally." The record does not support that characterization of his testimony. Mr. Garza testified that it appeared to him from the still image of the patrol car video that the headlights were "both working." But that was not sufficient to affirmatively controvert Palomo's detailed testimony about a distinct difference in the quality of light emanating from each headlight. As he perceived the vehicle coming toward him, Palomo testified that the right headlight "was not actually shining out the white light that is necessary for the driver to be able to see everything 90 degrees from the rearview mirror to the right side of the vehicle . . .

11

or passenger's side of the vehicle, correctly." Instead, "it was emitting an orange light going around where the headlight should be but was obviously not the white headlight as it should be." Palomo explained how the video showed the driver's side headlight was illuminated, with "a white aura that's striking the [pavement] directly in front of the driver's side light." In contrast, the passenger side headlight was "notably dimmer," with "no aura striking directly in front" of the car on the street. When Palomo turned his car around to follow Appellant's, he perceived an absence of light on the passenger side of Appellant's car. Immediately upon being pulled over, Appellant acknowledged an issue with her headlights, stating that she "just got stopped for that in Friendswood."

Even to the extent Appellant has demonstrated an issue of material fact as to whether the headlight was "working" to some degree, she presented no evidence that the headlight was "functioning normally." Nor did she present any other evidence to create a fact issue as to whether Palomo was either lying or unreasonably mistaken in his perception that the headlight on the passenger side was "notably dimmer," to the degree that a reasonable police officer would believe that Appellant might have committed a traffic violation because her headlights failed to emit light sufficient to reveal a person or vehicle at a safe distance ahead. *See Robinson*, 377 S.W.3d at 720–21 (explaining that an article 38.23(a) instruction is appropriate when "there is a dispute about whether a police officer

was genuinely mistaken, or was not telling the truth"); *Francis v. State*, 425 S.W.3d 554, 559 (Tex. App.—Fort Worth 2014, no pet.) ("'At a safe distance' requires evidence of the existing conditions, including darkness, atmospheric conditions, traffic, and roadside hazards.").

Because appellant did not raise any material fact issue, she was not entitled to an article 38.23 jury instruction. *Hamal*, 390 S.W.3d at 306. Accordingly, the trial court did not err in denying her request for the jury instruction.

## Conclusion

The evidence did not raise an affirmatively contested material issue of fact concerning the legality of the traffic stop that led to the discovery of marijuana in appellant's car. As such, she was not entitled to an article 38.23 jury instruction. Accordingly, we affirm the trial court's judgment.

Michael Massengale
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Publish. Tex. R. App. P. 47.2(b).