Hector Vargas HERNANDEZ,
Appellant,

v.

The STATE of Texas, Appellee.

NUMBER 13-14-00245-CR

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Delivered and filed March 30, 2017

Discretionary Review Refused
July 27, 2017

Hon. Fabian Guerrero, Edinburg, for Appellant.

Hon. Luis V. Saenz, Dist. Atty., Hon. Jennifer M. Avendano, Asst. Dist. Atty., Brownsville, for Appellee.

Before Justices Contreras, Longoria, and Hinojosa

## OPINION

Opinion by Justice Hinojosa

Appellant Hector Vargas Hernandez appeals his convictions for continuous sexual abuse of a child and two counts of aggravated sexual assault of a child, all first-degree felonies. *See* Tex. Penal Code Ann. §§ 21.02, 22.021 (West, Westlaw through 2015 R.S.). A jury returned a verdict of guilty and assessed punishment of forty years' imprisonment for continuous sexual abuse of a child and ten years' imprisonment for each count of aggravated sexual assault of a child. The trial court sentenced appellant accordingly and ordered the sentences to run concurrently. By three issues, appellant argues the trial court erred in (1) denying appellant's motion to suppress his statement, (2) denying appellant's request for a jury instruction under

article 38.23 of the code of criminal procedure, and (3) "commenting and ordering the jury to go back and correct the verdict form." We affirm.

## I. Motion to Suppress

By his first issue, appellant argues the trial court erred in denying appellant's motion to suppress his confession. Specifically, appellant maintains that he was not adequately advised of his rights because the warnings read to him "contained four warnings rather [than] the five contemplated by Article 38.22." Appellant further argues that the "written admonishments in Spanish ... consisted of a fatally defective translation using the word *'supracitada'* which is a Portuguese word[.]" As a result, appellant maintains that "his waiver [of his rights] was not voluntar[ily], knowing[ly] or intelligently given." [1]

### A. Suppression Hearing

Appellant's counsel argued during a pre-trial hearing that appellant's confession should be suppressed because "[appellant] was not properly instructed on his constitutional rights, and in the alternative, he didn't understand them." The State presented only one witness at the hearing—Alicia Garcia, an officer with the Harlingen Police Department.[2]

---

1. Appellant also raises the following suppression arguments on appeal, which were not presented to the trial court: (1) appellant was questioned after asserting his right to counsel; (2) appellant's confession was involuntary; and (3) appellant was not timely brought before a magistrate. To preserve a complaint for appellate review, a defendant must raise the complaint to the trial court by a timely request, objection or motion that specifically identifies the grounds for the ruling he seeks. Tex. R. App. P. 33.1(a)(1)(A). Therefore, we will address only those appellate arguments that comport with the arguments raised before the trial court. *See id.*; *Johnson v. State*, 263 S.W.3d 287, 290–91 (Tex. App.—Houston [1st

Dist.] 2007, pet. dism'd) (concluding that defendant's generic motion to suppress did not adequately preserve for review his claim on appeal that his post-arrest statement to police officers was the product of an illegal arrest where appellant never raised the issue to the trial court).

2. Appellant cites solely to the trial record in support of his appellate arguments. As a general rule, appellate courts are prohibited from considering evidence introduced after the suppression hearing. *Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012). Consideration of trial testimony is allowed only where the issues involved in the pre-trial sup-

Officer Garcia, reading from a written form, advised appellant of his *Miranda*[3] rights in Spanish prior to questioning him. The warnings provided to appellant were as follows:[4]

1. You have the right to have an attorney present to give you advice before and during interrogation.
2. If you are not able to obtain the services of an attorney on your own, you have the right that one be appointed to you so that he can give you advice before or during your interrogation.
3. You have the right to remain silent and not make any declarations or statements, and anything that you say may be used as evidence against you in a court of justice.
4. You have the right to end said interrogation at any time that you wish.

The Code determines that the officer who takes the defendant's declarations must give him the aforementioned warnings. The defendant, then, must knowingly, intelligently, and voluntarily waive his right to an attorney and the right to remain silent. Failure to comply with this will invalidate his confession.

Appellant initialed next to each of the enumerated rights and signed at the bottom of the written form. Appellant told Officer Garcia that he understood his rights. He then stated "Go ahead. I want to talk. I also want to vent." The written warnings, appellant's video-recorded statement, and the English translation of appellant's recorded statement were admitted into evidence.

Following Officer Garcia's testimony, appellant's counsel presented further argument that appellant "was not informed properly of his rights[.]" Specifically, appellant's counsel objected to the use of the word *"supracitada"* in the following sentence: *"El Codigo determina que el oficial que toma la declaracion del acusado debe darle la advertencia supracitada."* The court interpreter informed the trial court on the record that "if we separate the word *'supra citada*,' it means 'aforementioned.'" The interpreter translated the sentence in its entirety as reading, "The Code determines that the officer who takes the defendant's declarations must give him the aforementioned warnings." Appellant's counsel clarified that he was not arguing that appellant did not understand each individual right that was read to him. He was arguing only that *"supracitada"* is not a word in the Spanish language, and therefore, "[appellant's] rights were incorrectly given to him." The trial court denied appellant's motion to suppress.

At a subsequent pre-trial hearing, appellant's counsel urged the following additional ground for suppression of appellant's statement:

I'd ask the Court to take note that the Spanish version of my client's rights being entered into evidence as part of that hearing do not comply with Article

---

pression hearing have been consensually relitigated by the parties during trial on the merits. *Id.* at 636. The trial court in this case denied appellant's motion prior to trial, and the issue was not re-litigated at trial. The general rule therefore applies, and we may only consider evidence known to the trial court at the time of its ruling on the motion to suppress. *See Perez v. State*, 495 S.W.3d 374, 387 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

3. *See Miranda v. Arizona*, 384 U.S. 436, 441, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. At the suppression hearing, Officer Alicia Garcia read the warnings in Spanish as set out in the written form, and the court interpreter provided the English translation on the record.

38.22. And given that there are five particular rights, which my client is supposed to receive before his statement is to be used as evidence, this waiver of rights only has four lineated rights. What this waiver did was combine ... rights that are supposed to be read to my client, and because of that, I'm asking that my client's statement not be allowed and used as evidence in this proceeding.

The trial court again denied appellant's motion to suppress, and later issued the following findings of fact and conclusions of law: [5]

[A]t the very beginning of the video Investigator Alicia Garcia told [appellant] that he ... did not have to speak with her. The court finds [appellant] voluntarily agreed to speak with Investigator Alicia Garcia....

[I]nvestigator Alicia Garcia told [appellant] that she was going to read him ... his rights, and that if he did not understand her Spanish to please tell her he ... did not understand her Spanish, and if you do not want to proceed with [sic] do not have to proceed (with the interview)....

Investigator Lopez witnessed Investigator Alicia Garcia reading the *Miranda* rights to [appellant] and Investigator Lopez signed the document as witness. The video most importantly shows [appellant] signing his initials on each right read to him....

[A]t the end of the reading of the *Miranda* rights, [appellant] says he does not know how to read. The court finds the *Miranda* rights do not have to be read by [appellant], but must be read to him by an officer.... [T]he *Miranda* rights were accurately read to [appellant] and [he] understood his rights....

[A]t the end of the reading of the *Miranda* rights[,] Investigator Alicia Garcia AGAIN told [appellant] that he did not have to speak with her, and if he chose to speak with her, he could stop at any time....

AFTER all of the rights were read[,] Investigator Alicia Garcia asked [appellant] if he wanted to talk with her about the allegations or not. [Appellant] responded by asking Investigator Alicia Garcia if he spoke with her could he still hire a lawyer afterward. The investigator answered ["]Uh huh["] and she nods up and down indicating yes....

[Appellant] said [in Spanish] "Proceed, I want to talk.... I want to vent." ...

[Appellant] was read his *Miranda* rights in Spanish. [Appellant] understood his *Miranda* rights. [Appellant] does not read or write the English and Spanish languages; however, there is no requirement that [appellant] be able to read the *Miranda* rights to himself in Spanish and/or English to himself.... [T]he rights must be read to [appellant] preferably in his native language and in the language [appellant] understand[s]. [Appellant] was read the *Miranda* rights in Spanish, and [appellant] understood his rights. [Appellant] chose out of his own free will, freely and voluntary to speak to Investigators Garcia and Lopez on video tape.

[Appellant] was not tricked into giving a confession and [appellant] was told on

---

**5.** We initially abated this appeal and instructed the trial court "to enter an order stating its conclusion as to whether or not the challenged statements were voluntarily made, along with specific findings of fact upon which the conclusion is based." *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West, Westlaw through 2015 R.S.). The trial court subsequently entered findings of fact and conclusions of law which were filed as a supplemental clerk's record.

multiple occasions that he did not have to speak to the investigators. [Appellant] had multiple opportunities to say he did not want [to] speak with the investigators and [appellant] had multiple opportunities to say he did not want to speak with the investigators until he hired an attorney or one was appointed to represent him.

## B. Standard of Review

In reviewing the trial court's ruling on a motion to suppress statements made as a result of custodial interrogation, we apply a bifurcated standard of review. *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *Nelson v. State*, 463 S.W.3d 123, 126 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). We review the ruling in light of the totality of the circumstances, giving total deference to the trial court on questions of historical fact, as well as its application of law to fact questions that turn on credibility and demeanor. *Pecina*, 361 S.W.3d at 79; *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). But we review de novo the trial court's rulings on questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Pecina*, 361 S.W.3d at 79; *Leza*, 351 S.W.3d at 349. We view the record in the light most favorable to the trial court's ruling and reverse the judgment only if it lies outside the zone of reasonable disagreement. *Hereford v. State*, 339 S.W.3d 111, 118 (Tex. Crim. App. 2011); *Nelson*, 463 S.W.3d at 126.

## C. Article 38.22

Appellant argues that the warnings administered to him prior to questioning did not comply with article 38.22 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West, Westlaw through 2015 R.S.).

### 1. Applicable Law

"In *Miranda v. Arizona*, the Supreme Court crafted safeguards to protect this 'privilege against self-incrimination' in the inherently coercive atmosphere of custodial interrogations." *Pecina*, 361 S.W.3d at 75 (citing *Miranda v. Arizona*, 384 U.S. 436, 441, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Under *Miranda*, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602; *see Lampkin v. State*, 470 S.W.3d 876, 891 (Tex. App.—Texarkana 2015, pet. ref'd).

Article 38.22 of the code of criminal procedure establishes additional procedural safeguards for securing the privilege against self-incrimination. TEX. CODE CRIM. PROC. ANN. art. 38.22; *see Joseph v. State*, 309 S.W.3d 20, 23 (Tex. Crim. App. 2010). Article 38.22 provides that no oral statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless (1) the statement was recorded and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *Joseph*, 309 S.W.3d at 23–24 (citing TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3). The warning must inform a defendant of the following:

(1) [H]e has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time[.]

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a). For oral statements, the warnings given to the accused are effective even if not given verbatim, so long as they convey the "fully effective equivalent" of the warnings contained in Section 2(a). *See id.* § 3(e)(2). This requirement has also been referred to as "substantial compliance." *See White v. State,* 779 S.W.2d 809, 827 (Tex. Crim. App. 1989). A warning substantially complies with article 38.22 when it "convey[s] on the face of the statement the exact meaning of the statute, but in slightly different language[.]" *Id.* Thus, an accused's oral statement will be admissible even if he receives warnings that are "slightly different" from those contained in section 2(a). *See id.* Warnings that "fairly convey" the concepts included in Section 2(a) and do not "dilute the meaning or import of the warning" will satisfy the "fully effective equivalent" exception in section 3(e)(2). *Bible v. State,* 162 S.W.3d 234, 240–41 (Tex. Crim. App. 2005). A statement is not admissible unless the accused is given the required warnings "prior to the statement." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2).

## 2. Analysis

For illustrative purposes, we set the English translation of the warnings given to appellant side-by-side with the corresponding article 38.22 warning:

| Article 38.22 Warnings | Warnings Provided to Appellant |
| --- | --- |
| 1. [H]e has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; | You have the right to remain silent and not make any declarations or statements, and anything that you say may be used as evidence against you in a court of justice. |
| 2. [A]ny statement he makes may be used as evidence against him in court; | [No corresponding warning] |
| 3. [H]e has the right to have a lawyer present to advise him prior to and during any questioning; | You have the right to have an attorney present to give you advice before and during interrogation. |
| 4. [I]f he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and | If you are not able to obtain the services of an attorney on your own, you have the right that one be appointed to you so that he can give you advice before or during your interrogation. |
| 5. [H]e has the right to terminate the interview at any time. | You have the right to end said interrogation at any time that you wish. |

The warnings provided to appellant appear to combine the first two article 38.22 warnings into one sentence. As a result, the warnings provide that appellant's

statement may be used as evidence against him in *court*, but fail to additionally warn that any statement may be used against appellant at *trial*.

The Texas Court of Criminal Appeals has held on three occasions that warnings, similar to those administered in this case, substantially comply with the requirements of article 38.22. In *Sosa v. State*, the defendant was warned in part that, "Anything you say can be used against you in court." 769 S.W.2d 909, 914 (Tex. Crim. App. 1989). The court held that the warnings were "sufficiently similar to comply with the warnings set out in Article 38.22[.]" *Id.* at 916.

In *Cockrell v. State*, the court held that the following language substantially complied with article 38.22: "any statement I make may be used in evidence against me at *trail* [sic]." 933 S.W.2d 73, 91 (Tex. Crim. App. 1996) (emphasis and alteration in original). The defendant complained that the warning did not inform him that any statement could be used against him in court, and also complained of the misspelling of trial. *Id.* The court concluded, without discussion, that the warnings "substantially comply with Article 38.22, Sections 2(a)(1) & (2)." *Id.*

More recently, the court has explained that the warnings contained in sections (2)(a)(1) & (2) "appear to largely overlap and, in fact, 'court' is the broader term, and is reasonably understood to include the term 'trial.'" *Bible*, 162 S.W.3d at 241.

■ In this case, the warnings provided that "anything that you say may be used as evidence against you in a court of justice." We conclude that this warning could be reasonably understood to include the term "trial." *See id.* We also note that the phrasing used in this case is almost identical to the language in *Sosa* which the court determined was in substantial compliance with article 38.22. *See Sosa*, 769 S.W.2d at

914 ("Anything you say can be used against you in court."). Therefore, we hold that the warnings provided to appellant convey the "fully effective equivalent" of the warnings contained in article 38.22. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(e)(2); *Bible*, 162 S.W.3d at 241; *Cockrell*, 933 S.W.2d at 91; *see also Reyes v. State*, No. 13-14-00452-CR, 2016 WL 872736, at *11 (Tex. App.—Corpus Christi Feb. 18, 2016, pet. ref'd) (mem. op., not designated for publication) (concluding that the defendant "was properly advised, in full compliance with article 38.22," where Spanish translation of warnings included the term "*juzgado*," which the court interpreter translated as meaning either "trial" or "court"); *Grumbles v. State*, No. 08-01-00436-CR, 2003 WL 22516092, at *5 (Tex. App.—El Paso Nov. 6, 2003, pet. ref'd) (op., not designated for publication) (explaining that "[i]t is common knowledge that trials take place in court. A person who is warned that his statement will be used against him in a court of law would understand that it could be used against him at his trial").

## D. Waiver of Rights

Next, appellant argues that "his waiver [of his rights] was not voluntar[ily], knowing[ingly] or intelligently given[,]" because the inclusion of the term "*supracitada*" in the Spanish translation rendered the warnings "fatally defective."

### 1. Applicable Law

■ The State has the burden of showing that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Joseph*, 309 S.W.3d at 24. A waiver of rights does not have to be express but may be inferred from the actions and words of the person interrogated. *Id.* at 25. In evaluating whether appellant knowingly, intelligently, and vol-

untarily waived his *Miranda* rights, we use a two-pronged test, in which we ask: (1) whether the relinquishment of the right was voluntary by determining whether it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) whether the waiver was made with full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon them. *Id.* We look to the totality of the circumstances in determining whether a statement was made voluntarily. *Id.*

### 2. Use of the Term *"Supracitada"*

■ Appellant's argument relies entirely on the inclusion of the word *"supracitada"* in the Spanish translation of the written warnings. We note however that the phrase was read aloud to appellant. Further, as reflected in the trial court's findings, appellant could not read Spanish. The court interpreter stated on the record that the phrase *"supra citada"* when spoken as two words means "aforementioned." The sentence in which the phrase was included was translated to mean, "The Code determines that the officer who takes the defendant's declarations must give him the aforementioned warnings." There is no evidence in the record that appellant did not understand his rights due to the use of the term *"supracitada"* in this context. To the contrary, appellant explicitly stated to Officer Garcia that he understood his rights. He further indicated that he wished to waive his rights when he stated, "Go ahead. I want to talk." In reviewing the totality of the circumstances, we conclude the State met its burden in showing that appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Joseph*, 309 S.W.3d at 24.

### E. Summary

Having rejected each of appellant's arguments challenging the denial of his mo-

tion to suppress, we overrule appellant's first issue.

### II. JURY INSTRUCTION

By his second issue, appellant argues "the trial court erred in denying [appellant's] motion requesting jury instructions as to the voluntariness of the confession." Specifically, appellant maintains the trial court erred in denying his request for a jury instruction under article 38.23 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West, Westlaw through 2015 R.S.).

### A. Standard of Review and Applicable Law

■ In analyzing a jury-charge issue, we first determine whether error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). If we find error, then we consider whether the error was harmful under the appropriate standard. *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

■ Article 38.23 provides as follows:

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23. If a fact issue exists concerning whether evi-

dence was unlawfully obtained, then a trial court must instruct the jury that if it believes that the evidence was obtained in violation of article 38.23, then the jury should disregard the evidence so obtained. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007); *Pierce v. State*, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000). The evidence must (1) raise an issue of fact; (2) be affirmatively contested; and (3) be material to the lawfulness of the challenged conduct. *Madden*, 242 S.W.3d at 510. To obtain an instruction under article 38.23, the defendant must request an instruction on a specific historical fact.[6] *Id.* at 511. "Normally, 'specific' exclusionary-rule instructions concerning the making of a confession are warranted only where an officer uses inherently coercive practices." *Oursbourn v. State*, 259 S.W.3d 159, 178 (Tex. Crim. App. 2008).

## B. Analysis

 .Appellant's request to the trial court was as follows:

> Your Honor, I believe that the jury can consider and should be instructed to consider whether or not my client's statement was in violation of the constitution and the—therefore, the laws of the State of Texas as provided by the statute, that they be instructed that if they find that they have a reasonable doubt that the evidence was obtained in violation of the constitution or—constitution of the United States or the constitution of Texas, then they shall be instructed that they are able to disregard my client's statement.

Appellant did not request an instruction on a specific historical fact. Further, conducting our own independent review of the record, we do not find any contested issue of fact concerning appellant's confession. Appellant adduced evidence at trial that he was held in custody for thirty hours prior to the interrogation.[7] Appellant also questioned Officer Garcia concerning the use of the word *"supracitada"* in the Spanish translation of the warnings given to appellant. However, neither the translation of the warnings nor the length of detention were disputed. "If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law." *Madden*, 242 S.W.3d at 510.

 Appellant did not raise an affirmatively contested fact concerning the admissibility of his confession.[8] Therefore, the

---

6. Under Texas statutory law, there are three types of jury instructions that relate to the taking of confessions: (1) a "general" Article 38.22, § 6 voluntariness instruction; (2) a "general" Article 38.22, § 7 warnings instruction (involving warnings given under § 2 and § 3); and (3) a "specific" Article 38.23(a) exclusionary-rule instruction. *Oursbourn v. State*, 259 S.W.3d 159, 173 (Tex. Crim. App. 2008). Appellant's appellate issue addresses only the denial of an Article 38.23(a) exclusionary-rule instruction.

7. Appellant's counsel questioned Officer Garcia regarding the conditions of appellant's confinement during his thirty hours in custody. Appellant's counsel inquired whether appellant was provided food and whether he was able to sleep. Officer Garcia had no personal knowledge of appellant's treatment, and

appellant presented no affirmative evidence in this regard. To raise a disputed fact issue warranting an article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007). In other words, this factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument. *Oursbourn*, 259 S.W.3d at 177. Further, mere insinuations by a defendant's attorney on cross examination do not raise a fact issue. *See Garza v. State*, 126 S.W.3d 79, 87 (Tex. Crim. App. 2004).

8. The Court of Criminal Appeals has offered the following hypothetical to illustrate a fact issue requiring an article 38.23 instruction:

> For example, [an officer] may deny, on cross-examination, that he held a gun to the

trial court did not err in denying appellant's request for an article 38.23 jury instruction. *See Garza v. State*, 474 S.W.3d 825, 831 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012)). We overrule appellant's second issue.

### III. VERDICT

By his third issue, appellant argues the trial court erred "in commenting and ordering the jury to go back and correct the verdict form." Specifically, appellant maintains that the trial court's actions violated article 37.01 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 37.01 (West, Westlaw through 2015 R.S.).

### A. Pertinent Facts

During the announcement of the jury's verdict, the following exchange occurred:

Trial Court: Cause No. 2013-DCR-2661, State versus Hector Vargas Hernandez. Forms of Verdict. Please stand, Mr. Hernandez, Vargas Hernandez. "We, the jury, find the Defendant, Hector Vargas Hernandez AKA Hector Vargas, not guilty of the offense of Continuous Sexual Assault of a Young Child."

Foreperson: Excuse me. I think they—they double checked if I wrote in the right area. I need to redo this, ma'am.

Foreperson: All right. Let me send the jury back so they can fix the verdict form.

Appellant's Counsel: Your Honor—

Trial Court: You made a mistake?

Foreperson: Yes, ma'am. I made a mistake.

Trial Court: All right. Let me send you back.

Bailiff: All rise for the jury.

Trial Court: So you're saying you signed on the wrong form?

Foreperson: Exactly.

The jury exited the courtroom and returned. The following exchange then took place:

Trial Court: All right. Y'all may be seated. Madam Foreman, you have a corrected charge?

Foreperson: Corrected and double checked, yeah.

Trial Court: All right. And your testimony on the record is that you happened to sign on the wrong—

Foreperson: (Nods head.)

Trial Court: I need you to initial that you changed it right here where you did a white-out. I need you to put your initials on all three of them. Okay?

Foreperson: Sure.

The trial court read the verdict forms indicating that the jury found appellant guilty on all counts. The trial court then polled the jury, and each juror individually affirmed that the initial verdict form was signed in error and that a finding of guilt on all counts was the jury's true and correct verdict.

### B. Analysis

Article 37.01 of the code of criminal procedure provides that a "verdict" is "a written declaration by a jury of its decision of the issue submitted to it." TEX. CODE CRIM. PROC. ANN. art. 37.01. Article 37.04 provides that an agreed verdict "shall be read aloud by the judge," and

---

defendant's head to extract the confession. The implication by counsel, that the officer did perform that act, does not, by itself, raise a disputed fact issue. But if the defendant (or some other witness) testifies that the officer held a gun to his head, then a disputed fact issue exists. And the jury must resolve that disputed fact issue. *Oursbourn*, 259 S.W.3d at 177.

"[i]f in proper form and no juror dissents therefrom, and neither party requests a poll of the jury, the verdict shall be entered upon the minutes of the court." *Id.* art. 37.04 (West, Westlaw through 2015 R.S.). A trial court has no power to change a jury's verdict unless it is with the jurors' consent before they disperse. *Ex parte McIver*, 586 S.W.2d 851, 854 (Tex. Crim. App. 1979); *Rodgers v. State*, 442 S.W.3d 547, 551 (Tex. App.—Dallas 2014, pet. ref'd). Accordingly, a trial court does not err when it orders the jury to further deliberate or correct the verdict form after the jury informs the court it made a mistake in filling out the verdict form. *Rodgers*, 442 S.W.3d at 551; *see Reese v. State*, 773 S.W.2d 314, 317–18 (Tex. Crim. App. 1989) (concluding there was no error when trial judge twice sent the jury back for further deliberations due to confusion over the verdict forms); *Jones v. State*, 511 S.W.2d 514, 516–17 (Tex. Crim. App. 1974) (concluding there was no error in the trial judge returning the jury to correct verdict after observing variance between written verdict and jurors' responses to poll of jury); *see also Lane v. State*, No. 02-08-309-CR, 2010 WL 1730845, *4 (Tex. App.—Fort Worth Apr. 29, 2010, pet. ref'd) (mem. op., not designated for publication) (concluding there was no error in trial court returning jury to correct verdict form when jury communicated error to bailiff while court read verdict to defendant).

Here, the jury foreman informed the trial court that she had signed the wrong form. The trial court allowed the jury to correct the verdict form, before polling each juror individually to confirm that the revised verdict form was true and correct. Under these circumstances, we conclude the trial court's decision to allow the jury to correct the verdict form was not error. *See Reese*, 773 S.W.2d at 317–18;

*Jones*, 511 S.W.2d at 516–17; *Rodgers*, 442 S.W.3d at 551. We overrule appellant's third issue.

## IV. CONCLUSION

We affirm the trial court's judgment.