

**NUMBER 13-25-00309-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**THE STATE OF TEXAS,**                                                                 **Appellant,**

**v.**

**ANDREW ABEL GONZALEZ,**                                                           **Appellee.**

---

**ON APPEAL FROM THE COUNTY COURT AT LAW NO. 3
OF NUECES COUNTY, TEXAS**

---

## OPINION

**Before Justices Silva, Cron, and Fonseca
Opinion by Justice Fonseca**

Appellant the State of Texas (the State) appeals the trial court's grant of appellee Andrew Abel Gonzalez's motion to suppress the audio recording of a conversation between himself and a school administrator that was captured while they searched a middle school classroom. We find that Gonzalez, as a law enforcement officer, had no reasonable expectation of privacy in statements made while in a classroom during the

course of an investigation. We reverse and remand.

## I.  BACKGROUND

Gonzalez was a school resource officer[1] with the Corpus Christi Independent School District (CCISD). On March 7, 2023, Gonzalez was on duty at Hamlin Middle School when he and vice principal Amanda Corona ordered students out of a classroom to search for suspected contraband, a vape pen, in the students' belongings. A student left behind her cellphone with the recording function turned on, capturing audio of Gonzalez and Corona's conversation during the search. The recording indicates Gonzalez and Corona located the vape pen in a cabinet and discussed placing it in a particular student's backpack without evidence of whom it belonged to.

The student turned the recording over to law enforcement, which prompted an investigation into Gonzalez's conduct and eventually resulted in the Nueces County Sheriff's Office arresting him. On December 18, 2024, Gonzalez was formally charged with three counts of official oppression for intentionally subjecting three students to searches he knew were unlawful and for planting evidence. *See* TEX. PENAL CODE § 39.03(d).

On February 6, 2025, Gonzalez filed a motion to suppress the audio recording, arguing that it was obtained in violation of Texas Penal Code § 16.02 and his constitutional rights because neither Gonzalez nor Corona consented to being recorded by a third party. The State responded that a law enforcement officer performing official duties does not have a reasonable expectation of privacy, especially due to the public

---

[1] A school resource officer is "a peace officer who is assigned by the officer's employing political subdivision to provide a police presence at a public school, safety or drug education to students of a public school, or other similar services." *See* TEX. OCC. CODE § 1701.601.

interest in preventing police misconduct. The trial court held a hearing on Gonzalez's motion to suppress wherein Gonzalez repeated his arguments.

The trial court signed an order granting the motion to suppress on May 30, 2025. This interlocutory appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5).

## II.     ANALYSIS

By a single issue, the State argues the trial court erred when it granted Gonzalez's motion to suppress because he did not have a reasonable expectation of privacy.[2]

### A.     Standard of Review

We apply a bifurcated standard of review when reviewing a trial court's ruling on a motion to suppress evidence. *Hawkins v. State*, 592 S.W.3d 602, 609 (Tex. App.—Corpus Christi–Edinburg 2020, pet. ref'd). First, "[w]e review the ruling and consider the totality of the circumstances, giving total deference to the trial court on questions of historical fact, as well as its application of law to fact questions that turn on credibility and demeanor." *Id*. (citing *Pecina v. State*, 361 S.W.3d 68, 79 (Tex. Crim. App. 2012)). However, there are no factual disputes in this matter or factual rulings by the trial court as the parties agreed to a proffer of uncontested facts. Therefore, "we review de novo the trial court's rulings on questions of law." *Hernandez v. State*, 533 S.W.3d 472, 478 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) (citing *Pecina*, 361 S.W.3d at 79; *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011)). "We view the record in the light most favorable to the trial court's ruling and reverse the judgment only if it lies outside the

---

[2] The State raised First Amendment arguments for the first time in supplemental briefing. Because these issues were not raised at the trial court level, we will not consider them. *See* TEX. R. APP. P. 33.1(a); *see also State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (en banc).

zone of reasonable disagreement." *Hernandez*, 533 S.W.3d at 478.

**B.     Applicable Law and Discussion**

Texas Code of Criminal Procedure Article 38.23 provides that evidence obtained in violation of the law or the United States or Texas Constitutions shall not "be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a). This statute enables "suppression of evidence obtained by private individuals in violation of criminal laws." *State v. Ruiz*, 577 S.W.3d 543, 546 (Tex. Crim. App. 2019). But Gonzalez has the burden of producing evidence of the alleged violation. *See State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011). He contends the statements should be suppressed because they were recorded (1) in violation of his constitutional right to be free from unreasonable searches and seizures without a warrant and (2) in violation of the Texas Wiretap Statute.

**1.     Fourth Amendment**[3]

The Texas Court of Criminal Appeals has previously examined the interplay between Article 38.23 and the Fourth Amendment. Importantly, the Court held "reading Article 38.23 to apply the Fourth Amendment to private individuals would lead to an absurdity." *Ruiz*, 577 S.W.3d at 546. It is well-settled law that the Fourth Amendment does not apply to private wrongdoing and "does not deprive the government of the right to use evidence that it has acquired lawfully." *Walter v. United States*, 447 U.S. 649, 656 (1980), *quoted in Ruiz*, 577 S.W.3d at 546. After all, a private person cannot obtain a warrant to comply with the Fourth Amendment. *See id*. Thus, the Texas Court of Criminal Appeals

---

[3] While Gonzalez also refers to violations of his Fifth and Sixth Amendment rights, neither party briefed arguments on these issues nor argued these issues to the trial court. Accordingly, any associated error is waived. *See* TEX. R. APP. P. 33.1(a), 38.1(i).

4

"disavow[ed] the idea that Article 38.23 extends the Fourth Amendment to private citizens acting in a private capacity." *Ruiz*, 577 S.W.3d at 547.

Here, the audio recording was made by a student who was a private citizen. There is no allegation that this student was acting on behalf of law enforcement or doing anything other than acting in a private capacity. Accordingly, Gonzalez's Fourth Amendment rights were not violated by the student, and this is not a proper basis for the trial court's ruling. *See id*. The State should not be deprived of this evidence when it obtained it lawfully from the student. *See id*.

### 2. The Texas Wiretap Statute

Gonzalez's other basis for suppression was the Texas Wiretap Statute, and that is the primary focus of the State's appeal. This statute makes it an offense for a third-party to intentionally record oral communications using a recording device. TEX. PENAL CODE § 16.02(b). Gonzalez argues the student violated the statute when she recorded his conversation with Corona and, therefore, that he is entitled to suppress the recording under Article 38.23. The record is not developed regarding the student's intent when the cell phone was left recording in the classroom. However, the record need not be further developed to resolve this issue because we find the conversation between Gonzalez and Corona was not an "oral communication" as defined by the Texas Wiretap Statute.

The issue before us is novel and we find no caselaw directly on point. However, the Texas Court of Criminal Appeals provided a framework for examining violations of the Texas Wiretap Statute in the context of a motion to suppress. In *Long v. State*, the Court held that the wiretap statute directly incorporates the Code of Criminal Procedure's definition of "oral communication," which is a communication "uttered by a person

5

exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation." 535 S.W.3d 511, 521 (Tex. Crim. App. 2017);TEX. CODE CRIM. PROC. ANN. art. 18A.001(19); TEX. PENAL CODE § 16.02(a)(1). By virtue of this incorporation, the Texas Court of Criminal Appeals concluded that, this definition of "oral communication" incorporates the Fourth Amendment's legitimate-expectation-of-privacy standard. *Long*, 535 S.W.3d at 524–25.[4] This standard requires us to examine whether the person speaking displayed "a subjective expectation of privacy" and "whether society is prepared to recognize" that expectation "as objectively reasonable." *Id*. at 525. Therefore, to determine if the student's cell phone recording should have been suppressed, we must determine if Gonzalez had a subjective expectation of privacy and whether society is prepared to recognize his expectation as objectively reasonable. *See id*.; TEX. PENAL CODE § 16.02(b); TEX. CODE CRIM. PROC. ANN. arts. 18A.001(19), 38.23(a).

Like in *Long*, it is undisputed that Gonzalez exhibited an expectation that his communication would not be subject to interception. *See Long*, 535 S.W.3d at 525. Gonzalez and Corona cleared the room of all students before speaking with each other and made statements that the record indicates they did not want to be overheard. Therefore, we turn to whether Gonzalez's subjective expectation of privacy is one society is prepared to recognize as objectively reasonable. *See id*.

---

[4] Arguably, the Texas Court of Criminal Appeals' holding in *Ruiz* that Article 38.23 can never apply to the Fourth Amendment when involving private citizens, when read together with *Long*'s incorporation of Fourth Amendment analysis, would result in holding that the wiretap statute can never be used to support an Article 38.23 suppression if the recording is done by a private citizen. *See Long*, 535 S.W.3d at 524–25; *see also Ruiz*, 577 S.W.3d at 546–47. This is because per *Long* the Fourth Amendment expectation-of-privacy standard will always be used to analyze a potential violation of the wiretap statute, which a private citizen inherently cannot violate. *See Long*, 535 S.W.3d at 524–25; *see also Ruiz*, 577 S.W.3d at 546–47. However, we decline to reach this result as the Texas Court of Criminal Appeals has not expressly reached this holding and we leave it to that Court to make such a holding for the first time.

Texas courts have examined a variety of factors when determining whether someone has an objectively reasonable expectation of privacy. *Id*. at 529. These factors include whether:

   (1)    the person had a proprietary or possessory interest in the place searched;

   (2)    the person's presence in or on the place searched was legitimate;

   (3)    the person had a right to exclude others from the place;

   (4)    the person took normal precautions, prior to the search, which are customarily taken to protect privacy in the place;

   (5)    the place searched was put to a private use; and

   (6)    the person's claim of privacy is consistent with historical notions of privacy.

*Id*. However, the factors are not exhaustive, and none alone is dispositive; instead, "we examine the circumstances in their totality." *Id*. "[A] person may claim only that his own rights have been violated" because the "constitutional right to be free from unreasonable searches is a personal right that cannot be asserted vicariously." *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014). Therefore, Gonzalez cannot claim a vicarious privacy interest on behalf of law enforcement generally but instead can only argue regarding his personal privacy interest. *See id.*; *Long*, 535 S.W.3d at 529.

Gonzalez principally argues that there are many circumstances where communication between law enforcement officers would preferably remain private and should not be allowed to be recorded. In making this argument, Gonzalez represents the State's position as essentially that all conversations between law enforcement should be recorded. But that is not the State's argument, and we need not make such a broad holding in examining the privacy issue here. The issue does not involve a broad claim

that law enforcement should always be recorded; rather, it involves whether an officer working in a public setting, in an active investigation, who happens to be recorded by a private citizen, can claim a privacy interest in that recording.

We do not disagree with Gonzalez that there are many situations where law enforcement officers would prefer their communications to remain private and to which society would generally acquiesce in terms of privacy. For example, two officers discussing strategy prior to execution of a warrant certainly do not want their strategies to reach the ears of the people they are about to search ahead of time. But the importance of protecting law enforcement strategies is not the interest we are examining. Again, we must review the *Long* factors through the lens of Gonzalez's personal privacy, and our examination of the *Long* factors leads us to conclude that Gonzalez's personal subjective expectation of privacy was not objectively reasonable under these facts.

Starting with the first factor, we conclude that Gonzalez had no proprietary or possessory interest in the public-school classroom. Gonzalez was working at the school in an official capacity and had no more of a possessory interest in the classroom than anyone else. It was part of his duties to be present in the classroom, which does not create any possessory interest on Gonzalez's part as a private individual. *See Long*, 535 S.W.3d at 529. It would be irrational to hold that a law enforcement officer can create a private possessory interest in an otherwise public area because he is investigating it, as that would only serve to unnecessarily shield abusive law enforcement conduct—as we discuss below.

Regarding the fifth factor, the present facts differ from *Long* when it comes to whether there was a private use of the classroom. In *Long*, the recording at issue was

8

obtained by a cell phone secretly placed by a student in an opposing girls high-school basketball team's locker room to record their coach's halftime speech. *Id*. at 515. The locker room area at issue was secured by two different sets of doors to prevent unauthorized entry. *Id*. at 530. Police had previously prevented individuals from accessing the locker room during a different game and the coach was excluding others from the girl's locker room to communicate private messages to his team. *Id*. The girls' locker room was understood as a generally private area. *See id*. Therefore, the Texas Court of Criminal Appeals determined this was a private use. *Id*.

By contrast, we do not find Gonzalez was putting the classroom to a private use by performing his duty as a CCISD resource officer and performing a search. The classroom did not generally have restricted entry in the way the girl's locker room in *Long* did. *See id*. Classrooms are "open to students, other faculty, administrators, substitute teachers, custodians, and on occasion, parents." *Id*. at 532 (quoting *Plock v. Bd. of Educ. of Freeport Sch. Dist. 145*, 545 F.Supp.2d 755, 756 (N.D. Ill. 2007)). While Gonzalez and Corona did make the students leave the classroom, nothing in the record establishes that another teacher, administrator, or custodian would have been prevented from entering the classroom.

Further, we do not believe a school resource officer searching a public classroom during normal school hours can legitimately claim private use. That is not to say law enforcement searches are generally open to public interference or intrusion, but officers searching public areas as part of their job duties are performing a public service as an agent of the State and should not be able to claim private use such that they have a personal expectation of privacy that society should protect. If we were to read *Long* to

9

create a personal privacy interest on the part of government agents in the course of their duties, this would run contrary to the principles of restraint against government that the Fourth Amendment analysis is intended to protect. *See Ruiz*, 577 S.W.3d at 546–47. Moreover, the mere fact that Gonzalez did not want his statements about planting the vape pen in a particular student's backpack to be heard does not make the use of the classroom private in this context.

As to the sixth factor of historical notions of privacy, Texas precedent has held that teaching in a public classroom does not fall within an expected zone of privacy. *See Long*, 535 S.W.3d at 541 (citing *Roberts v. Hou. Indep. Sch. Dist.*, 788 S.W.2d 107, 111 (Tex. App.—Houston [1st Dist.] 1990, writ denied)). Gonzalez was not teaching, but, apart from having the students leave the classroom, there is no evidence in the record that Gonzalez or Corona did anything else to protect their privacy as the fourth factor in *Long* has us consider. Thus, based on the record, there were many ways Gonzalez's statements could have been heard.

For instance, had the students overheard Gonzalez and Corona from the open doorway, the same lack of privacy would exist. *See id*. Or if the school already had cameras and microphones in the classroom recording, Gonzalez's arguments would fail for the same reasons. "There is no invasion of the right of privacy when one's movements are exposed to public views generally." *Roberts*, 788 S.W.2d at 111 (citing *United States v. Arredondo-Morales*, 624 F.2d 681, 685 (5th Cir. 1980)). That the audio was recorded by a student's cell phone rather than heard from an open doorway or recorded in an already placed recording device is incidental and not determinative to the expectation of privacy. We do not find there is any historical notion of privacy attached to Gonzalez's

10

actions as a law enforcement officer searching a public place, with students standing just outside the classroom. *See Long*, 535 S.W.3d at 541.

While Gonzalez's role as a CCISD resource officer allowed him to work in tandem with Corona to legitimately exercise his authority and clear the classroom of students to search for the vape pen. These facts are only relevant to the second and third factors in *Long*. However, we do not find these factors determinative in this case. *See Long*, 535 S.W.3d at 529. It would set a dangerous precedent for us to hold that a law enforcement officer can generally claim a personal privacy interest in an otherwise public setting during the course of his duties, as such an interest would only serve to shield the exact type of communications at issue here: law enforcement statements wherein they are communicating nefarious acts they want hidden from the public.

This does not mean that the content of the communication factors into the determination of a privacy interest. However, when examining the historical notions of privacy, the fact that a law enforcement officer is making a statement in the course of his job duties becomes part of the analysis of whether they have a personal privacy interest. Gonzalez's aforementioned hypotheticals improperly focus on the content of two law enforcement officers' statements to each other to argue for the privacy interest, rather than the location and nature of the communication as *Long* instructs us to review. *Id*.[5]

At least one federal court has found that society does have a historical interest "in ferreting out misconduct by police officers." *Shields v. Burge*, 874 F.2d 1201, 1204 (7th Cir. 1989). The examples the State cites where law enforcement have reduced

---

[5] Gonzalez's other arguments about public school students having decreased expectations of privacy is irrelevant to the issues before us. The privacy interest at issue is Gonzalez's.

expectations of privacy, while not directly on point or binding, are illustrative for this factor. *See, e.g.*, *Hornberger v. Am. Broad. Cos.*, 799 A.2d 566, 593–94 (N.J. Super. Ct. App. Div. 2002) (holding police officers have diminished expectations of privacy because they occupy special positions of power and when they interact with the public); *Angel v. Williams*, 12 F.3d 786, 790 (8th Cir. 1993) (police officers do not have privacy interest in statements made while subduing inmate in jail); *State v. Flora*, 845 P.2d 1355, 1357 (Wash. 1992) (holding that recording police officers during arrest does not violate Washington's wiretap statute as police officers do not have a personal privacy interest in their statements).

We agree that Gonzalez has a diminished expectation of privacy when acting as a law enforcement officer because he occupies a position of public trust and exercises special powers. The precedent we have found from federal courts in Texas also aligns with this principle. *See Shawgo v. Spradlin*, 701 F.2d 470, 483 (5th Cir. 1983) ("It seems to us to be self-evident . . . that police officers enjoy no constitutionally protected right to privacy against . . . investigations of their violations . . . of law."); *Thompson v. City of Arlington, Tex.*, 838 F.Supp. 1137, 1145 (N.D. Tex. 1993) ("The power vested in police officers has served as justification for infringement of their privacy interests."). Moreover, the Fourteenth Court of Appeals has previously articulated—and we agree—that "[b]y accepting public employment as a police officer he subordinated his right of privacy as a private citizen to the superior right of the public to an efficient and credible police department." *See Richardson v. City of Pasadena*, 500 S.W.2d 175, 177 (Tex. App.—Houston [14th Dist.] 1973); *rev'd on other grounds*, 513 S.W.2d 1 (Tex. 1974). Accordingly, we find no historical notion of privacy under Texas law for a law enforcement

officer conducting a search in a public-school classroom.

As Gonzalez has the burden of proving the statutory violation and thus showing he has a reasonable expectation of privacy, he had to produce evidence or provide support for his position that he had a personal privacy interest to statements made in a public classroom. *See Robinson*, 334 S.W.3d at 779. Gonzalez has not done so and we must therefore conclude that the trial court erred in suppressing the recorded statement.

### III. CONCLUSION

We reverse the trial court's order granting the motion to suppress, and we remand with instructions to deny the motion to suppress and for further proceedings consistent with this opinion.

YSMAEL D. FONSECA
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
8th day of January, 2026.