

# NUMBER 13-20-00109-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ALEJANDRO CABALLERO,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

## On appeal from the County Court at Law No. 5
## of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva
Memorandum Opinion by Justice Silva**

Appellant Alejandro Caballero appeals his conviction of deadly conduct, a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 22.05(a). By three issues, which we have rearranged, appellant argues (1) the evidence was legally insufficient to support his

conviction, and the trial court erred in failing to include jury charge instructions on (2) jury unanimity and (3) the law of presumption. *See id.* § 2.05. We affirm.

## I.    BACKGROUND

At trial, complainant Javier McClain testified that on January 25, 2018, at approximately 4:30 p.m. in Harlingen, Texas, he was exiting the freeway onto the frontage road, preparing to turn onto Loop 499, when he observed a black Ford moving parallel to the freeway. McClain identified appellant in the courtroom as the driver of the black Ford. McClain testified that it did not appear that appellant would yield the right-of-way, so McClain sped up, and he was "at least two car lengths in front of [appellant's] car" when he merged onto the frontage road and pulled into a right-hand turning lane. After McClain turned, he moved into the left-hand lane and came to a stoplight. McClain then noticed appellant's vehicle "coming up on [him]" through his rearview mirror and stop on the median beside him. McClain testified:

> I saw he had his window rolled down, so I rolled my window down, and I looked over and he had a gun . . . . I looked at the vehicle and I heard him say, "You stupid son of a," and he pointed the gun sideways, like they do on TV, at me[,] and he said, "I could have shot you for what"—"I could shoot you for what you did," and that's when I grabbed—my phone was sitting right there in the console. I grabbed it and I dialed 911 immediately.[1]

McClain stated appellant then "took off through traffic." McClain later saw the same vehicle "pulled over in front of the Stripes on the side of the road," and he parked behind appellant's vehicle in an attempt to get license plate information. McClain testified that he was on the phone with the dispatch operator when he saw appellant step out of his vehicle. "As he's walking towards me, you know, I thought, 'I'm going to die,' because it looked like—I can't be positive—it looked like he had the gun in his hand as he's walking

---

[1] An audio recording of McClain's 9-1-1 call was admitted into evidence.

2

towards me . . . ." McClain stated appellant then unexpectedly "ran back to his vehicle, jumped in, and took off at a high rate of speed." McClain proceeded to follow appellant's vehicle before eventually losing appellant through traffic.

When asked why he chose to follow appellant if he feared for his life, McClain stated, "I was hoping that Harlingen [Police Department] would be able to show up and I—I could say which direction he was going and everything so that they could stop him and, you know—and arrest him for what he did." According to McClain, appellant had displayed a black, semiautomatic pistol, "like maybe a Glock or a Beretta," and "there was something shiny on the tip of it."[2]

During trial, McClain was questioned regarding his criminal history. McClain, a retired United States Marine and border patrol agent, was sentenced to the federal penitentiary on September 28, 2009, for possession with intent to distribute more than 1,800 pounds of marijuana. At the time of this incident, McClain was on federal probation.

Sergeant Pedro Ibarra with the Harlingen Police Department testified McClain claimed appellant pointed a black handgun with a "silver tip" at him and said, "You stupid son of a b-tch[;] I can shoot you for what you did back there." Ibarra testified that he found that the license plate information provided by McClain "came back to a company" out of St. Louis, Missouri. The vehicle had been issued to appellant, and the company provided Ibarra with appellant's current address and phone number. Ibarra called appellant, who denied any wrongdoing but agreed to provide a statement in the subsequent days. Ibarra received a call from appellant's attorney on the following Monday, indicating that appellant would be submitting a written statement.

---

[2] McClain provided the same description to dispatch.

3

Appellant's written statement was admitted at trial, and in it, appellant disclosed he had a recently-purchased "nine-millimeter pistol" in his possession at the time. Appellant stated that the gun had been "in the middle leather console in between the two seats of [his] vehicle," and he never "brandish[ed] the pistol or threaten[ed] to use it in any way against [McClain]." Ibarra testified he independently confirmed appellant had purchased a handgun at 4:08 p.m., shortly before the incident occurred.

Appellant also testified at trial. He stated he had purchased the gun as a surprise gift for his wife, he owned several handguns, and he had a concealed handgun license. As to his recollection of events, appellant testified:

> There were two cars in front of me. And I noticed in my rearview mirror that this car is—this vehicle is speeding really fast in between the two vehicles. And he passes me and passed the car in front of me and does not stop at the stop sign and goes into this lane—the right lane to go towards the Loop. And I was just more like freaked out that he didn't even cause an accident. So I pull in and all of a sudden I find myself parked next to this guy who had just done that and he's shaking his steering wheel . . . . He's angry. He's really angry. I figured because he did all that and got stuck in traffic. I don't know. I don't know.

> So he's looking at me all of [sic] because he sees that I'm looking at him[,] and he pointed at me. So at this point—I thought his window was rolled down because I have tint[,] and he didn't have tint. So I rolled my window down. His window starts to go down and that's when he—he goes, "What's your problem?" And I said, "My problem? You're the one that just cut the stop sign off back there. Some of us are trying to get home to our families."

> And then he looked into my car. He's in a higher vehicle. He can look—really look—really look into my vehicle. And he asked me if I was a cop. He goes, "Are you a cop?" And I said, "No." That kind of like threw me off. I said, "No, I'm not." He said, "F off."

> So at this point, I'm in the lane where—it's a third lane, but some people back it up a lot, especially in traffic. And the light to turn left turns green. I wanted to put—I was going to turn left to put gas in, but I figured after that—and I have a gun that's not loaded[,] and it's brand new. I have no way to protect myself. I'm not going to stop anywhere and give this guy a chance to come and confront me.

4

> So right after that, I crossed the train tracks . . . . All of a sudden, this vehicle was behind me really close, so I pulled over to the shoulder, but as soon as I pulled up, it backed off. I wasn't sure if it was that same person or not.
>
> So I got out of the vehicle to see if it was him[,] and I couldn't see because he was kind of far. I figured I was being paranoid. So I got back in my car and I started to go home. As soon as I got in my car, though, this vehicle started following me. So I kind of had more of a reason to believe it was him. So I turned right. He turned right. I turned right again. I sped up a little bit more. By the time I turned around, I didn't see him anymore.

Appellant testified he received a call from Ibarra a few days later and "went straight to the police department," but Ibarra was not available, and he was told by another detective to return on Monday. Appellant was thereafter advised by friends to hire a lawyer. Appellant repeatedly denied ever touching his handgun during the verbal exchange and said when he exited his vehicle near the Stripes, he had his cell phone in his hand, not a handgun.

On cross-examination, appellant was questioned as to why, if he had just purchased the handgun, he had not left the gun in the box instead of driving around with it resting on his vehicle console. Appellant stated he "believe[d] it was safe because it was not loaded[,] and it was trigger-locked."

A jury returned a guilty verdict, and the trial court sentenced appellant to twelve months in the county jail probated for fifteen months of community supervision. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

Appellant first argues the evidence was legally insufficient to convict him of the offense of deadly conduct because the State failed to prove "the element of fear of imminent danger of serious bodily harm." *See* TEX. PENAL CODE ANN. § 22.05(a).

## A.      Standard of Review and Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04. Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

Here, a hypothetically correct charge would instruct the jury to find appellant guilty of deadly conduct as alleged if appellant recklessly engaged in conduct that placed McClain in imminent danger of serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.05(a). A person acts recklessly "when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c). A defendant's culpable mental state may be inferred from words, acts, or conduct of the accused and from the circumstances under which the act occurred. *See Linden v. State*, 347 S.W.3d 819, 822 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd). "Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." TEX. PENAL CODE ANN. § 22.05(c); *see Safian v. State*, 543 S.W.3d 216, 222 (Tex. Crim.

App. 2018). Although the Texas Penal Code does not define "imminent," the Texas Court of Criminal Appeals has defined that term to mean "'ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near.'" *Garcia v. State*, 367 S.W.3d 683, 689 (Tex. Crim. App. 2012) (quoting *Devine v. State*, 786 S.W.3d 268, 270 (Tex. Crim. App. 1989)). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(46).

## B.    Analysis

Appellant specifically argues there was no evidence of imminent danger in either the traffic light or Stripes incident. For the former, appellant argues McClain "testified that [appellant] did not point the firearm at him or in his direction," and the threats allegedly made by appellant were conditional. Appellant further contends that McClain was unsure whether appellant had a gun when he began approaching him on foot during the latter incident.

Contrary to appellant's representation of McClain's statements as to what transpired at the traffic light intersection, McClain testified: "[Appellant] pointed the gun sideways, like they do on TV, *at me*[,] and he said, 'I could have shot you for what'—'I could shoot you for what you did.'" (Emphasis added). McClain's testimony that appellant "pointed the gun sideways . . . at [him]" and told him "I could shoot you" constituted sufficient evidence that appellant had recklessly placed McClain in imminent danger of serious bodily injury. *See Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004) ("[O]ne can 'use' a weapon without exhibiting it, but not vice versa."); *see also Washington*

7

*v. State*, No. 06-20-00060-CR, 2020 WL 6749942, at *4 (Tex. App.—Texarkana Nov. 18, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding that a complainant's testimony "that [the appellant] said, 'I could go—should go back in my backpack and I could shoot you and everybody in the store,' was legally sufficient to establish that [the appellant] threatened [the complainant] with bodily injury"). While appellant denied making such statements and McClain's exact reiteration of what appellant allegedly told him varied during trial, it is within the jury's sole purview to determine the credibility of the complainant and to draw reasonable inferences from all of the evidence presented before them, including any conflicting statements. *See Stahmann*, 602 S.W.3d at 577; *see also Dawson v. State*, No. 04-18-00023-CR, 2018 WL 6624505, at *7 (Tex. App.—San Antonio Dec. 19, 2018, pet. ref'd) (mem. op., not designated for publication) (providing that although the appellant denied firing "'at or in the direction of' [the complainant], it is within the jury's sole purview to determine the credibility of the witnesses and to draw reasonable inferences from *all* of the evidence presented before them").

When viewing the evidence in the light most favorable to the verdict, we conclude that the jury here could have reasonably found that the prosecution met its burden to prove appellant committed the offense of deadly conduct. *See Stahmann*, 602 S.W.3d at 577. We overrule appellant's first issue.

### III.    CHARGE ERROR

By his second and third issues, appellant contends that the trial court erred when it failed to include charge instructions on jury unanimity and the law of presumptions. *See* TEX. PENAL CODE ANN. § 2.05(a)(2); *French v. State*, 563 S.W.3d 228, 233 (Tex. Crim.

App. 2018) ("A defendant in a criminal trial in Texas has the right to a unanimous jury verdict on each element of the charged offense.").

## A. Standard of Review

The purpose of the trial court's jury charge is to instruct the jurors on all of the law applicable to the case. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14. In analyzing an alleged jury charge error, our first duty is to determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). We review an alleged jury charge error for abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). If we find error, we then analyze that error for harm. *Id.* The degree of harm necessary for reversal depends on whether the error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)); *Hernandez v. State*, 533 S.W.3d 472, 481 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd).

If there is error and the defendant preserved the alleged error, then we must reverse if we find "some harm." *Jordan*, 593 S.W.3d at 346; *Almanza*, 686 S.W.2d at 171. But when, as here, the jury charge error is not preserved, the court will reverse only upon a showing of "'egregious harm,' which occurs when the error created such harm that the appellant was deprived of a fair and impartial trial." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019) (citing *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015)); *Almanza*, 686 S.W.2d at 171. "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020) (quoting *Ngo*, 175 S.W.3d at 743). When considering whether a defendant suffered

9

egregious harm, we must consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.*; *Almanza*, 686 S.W.2d at 171.

**B.    Jury Unanimity**

By his second issue, appellant argues that the trial court "failed to provide an incident-specific unanimity instruction in the jury charge to prevent a non-unanimous conviction based on two separate units of prosecution."

A jury must reach a unanimous verdict in order to convict. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1395 (2020); *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014). Non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions, and the charge fails to properly instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented. *Cosio v. State*, 353 S.W.3d 766, 771–72 (Tex. Crim. App. 2011). To guarantee jury unanimity, the jury must be instructed that it must unanimously agree on one incident of criminal conduct based on the evidence that meets all of the essential elements of the single charged offense beyond a reasonable doubt. *Id.* at 776. This is so because each incident of criminal conduct individually establishes a distinct offense or "unit of prosecution." *Id.* at 772. Jury unanimity is "generally not required on the alternate modes or means of commission." *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007). "The means of commission or nonessential unanimity elements are generally set out in 'adverbial phrases' that describe how the offense was committed," and such phrases are commonly

10

preceded "by the preposition 'by[.]'" *Id.* at 715. Therefore, in a jury unanimity analysis, it is necessary to identify the essential elements or gravamen of an offense and the alternate modes of commission, if any. *Id.* at 715.

First, we examine the language defining the penal offense to determine whether the legislature has created a single offense with multiple or alternate modes of commission. *O'Brien v. State*, 544 S.W.3d 376, 382–83 (Tex. Crim. App. 2018). In other words, to ascertain the focus or gravamen of the offense, we look to the statutory language to decide whether a crime is a "result of conduct," "nature of conduct," or "circumstances of conduct" offense. *Id.*; *Young v. State*, 341 S.W.3d 417, 423–24 (Tex. Crim. App. 2011).

> A "result of conduct" offense generally requires a direct object for the verb to act upon: in the statutory language punishing murder, "causes" is the verb, and "death"—the result—is the direct object. Further, different subsections in a "result of conduct" statute may punish distinctly different acts that cause the same result, and it is the result rather than the specific act that is the focus of the offense. "Nature of conduct" offenses, on the other hand, generally use different verbs in different subsections, an indication that the Legislature intended to punish distinct types of conduct. For example, the credit-card-abuse statute criminalizes a wide range of different acts—stealing a credit card, receiving a stolen credit card, using a stolen credit card, and so forth. With an offense whose criminality depends upon the "circumstances surrounding the conduct," the focus is on the particular circumstances that exist rather than the discrete, and perhaps different, acts that the defendant might commit under those circumstances. For example, in the failure to stop and render aid statute, the focus is upon the existence of an automobile accident. That circumstance gives rise to a driver's duty to stop, return to the scene, and render aid to any injured people.

*Young*, 341 S.W.3d at 423–24 (internal citations omitted).

If the gravamen of the crime is the "result of the conduct," the jury must be unanimous about the specific result required by the statute but not the specific conduct. *O'Brien*, 544 S.W.3d at 382. If the gravamen of the crime is the "nature of the conduct,"

11

the jury must be unanimous about the specific criminal act committed. *Id.* And if the gravamen of the crime is a "circumstances surrounding the conduct," unanimity is required about the existence of the particular circumstance of the offense. *Id.* Once we ascertain the gravamen, we then "ask whether jury unanimity on the alternate means or modes of commission—the brute facts of the offense—is nevertheless required as a matter of due process because the alternate means are so disparate as to become two separate offenses." *Id.*

Deadly conduct is contained in Chapter 22 of the Texas Penal Code, which deals with assaultive offenses. *See* Tex. Penal Code Ann. §§ 22.01–.12. Many assaultive offenses are result-oriented offenses. *See, e.g.*, *Ex parte Smith*, 185 S.W.3d 887, 889 n. 5 (Tex. Crim. App. 2006) (concluding that aggravated assault is a result-oriented offense); *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985) (concluding that "the injury to a child statute, like the homicide and other assaultive proscriptions" is result-oriented because "[w]hat matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the Legislature has specified"); *but see Guzman v. State*, 988 S.W.2d 884, 887 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.) (concluding a threat to injure another under the assault statute § 22.01 was a "nature of conduct" offense).

Deadly conduct differs from most assaultive offenses. This Court and several sister courts have determined § 22.05(a) is a "conduct-oriented" offense. *See Ford v. State*, 38 S.W.3d 836, 845 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *see also Qalawi v. State*, No. 13-14-00033-CR, 2015 WL 3637818, at *6 (Tex. App.—Corpus Christi–Edinburg June 11, 2015, no pet.) (mem. op., not designated for publication) (observing

the same in dicta). In *Ford*, our sister court in Houston reasoned that § 22.05(a) was "not a result[-]oriented offense because it does not pr[o]scribe a specific result, but rather requires only that the actor engage in the proscribed conduct." *Ford*, 38 S.W.3d at 845. Although the court in *Ford* did not elaborate on its analysis, its conclusion is supported by an examination of the statute. *See O'Brien*, 544 S.W.3d at 386–87 ("[W]e apply the rules of grammar to the text of the statute describing the offense in the context of the entire statutory scheme to attempt to discern the Legislature's intent in passing the statute."); *Jefferson v. State*, 189 S.W.3d 305, 314 (Tex. Crim. App. 2006) (Cochran, J., concurring).

The language of § 22.05(a) is unambiguous and expresses a clear legislative intent that a person commits the offense of deadly conduct if he recklessly "engages in conduct" that "places another in imminent danger of serious bodily injury." *See* TEX. PENAL CODE ANN. § 22.05(a). Deadly conduct is, thus, a "nature-of-conduct" offense because it is the nature of the conduct—i.e., conduct that places another in imminent danger of serious bodily injury—which is prohibited, irrespective of the result of said conduct.[3] Therefore, the jury must be unanimous about the specific conduct committed. *O'Brien*, 544 S.W.3d at 382; *Pizzo*, 235 S.W.3d at 719 (providing that in "conduct-oriented"

---

[3] We observe that several sister courts have analyzed a separate provision of the deadly conduct statute—discharge of a firearm, *see* TEX. PENAL CODE ANN. § 22.05(b)—and determined it was a circumstances-surrounding-the-conduct offense because "it matters not whether the discharge causes injury or damage" (i.e., result-oriented) "[n]or is the focus on the mere act of discharging a firearm, which is not inherently criminal conduct" (i.e., nature of the conduct or conduct-oriented). *Lozano v. State*, 577 S.W.3d 275, 278 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *see Zuliani v. State*, 383 S.W.3d 289, 299 (Tex. App.—Austin 2012, pet. ref'd) (concluding the same); *Miles v. State*, 259 S.W.3d 240, 249 (Tex. App.—Texarkana 2008, pet. ref'd); *see also Woods v. State*, No. 11-15-00134-CR, 2017 WL 3711104, at *2 (Tex. App.—Eastland Aug. 25, 2017, no pet.) (mem. op., not designated for publication). However, there are notable differences between the two statutory provisions. *Compare* TEX. PENAL CODE ANN. § 22.05(a) ("A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.") *with id.* § 22.05(b) ("A person commits an offense if he knowingly discharges a firearm at or in the direction of . . . one or more individuals."). While the criminality of the discharge of a firearm is based on the circumstances surrounding the conduct, the same cannot be said about "engag[ing] in conduct that places another in imminent danger . . ." which is intrinsically criminal.

offenses, "each act constitutes a different criminal offense and juror unanimity is required as to the commission of any one of these acts").

We must now determine whether the jury was provided evidence of two separate criminal acts of deadly conduct. The information and charge alleged appellant recklessly engaged in conduct that places another in imminent danger of serious bodily injury "by use or exhibit of a deadly weapon, to wit: a handgun." Appellant contends that his use or exhibition of the handgun during the traffic light incident and then again during the convenience store incident constitute two separate acts requiring an incident-specific unanimity instruction. *See Cosio*, 353 S.W.3d at 776 (observing that, depending on the State's evidence, it is sometimes appropriate to instruct the jury that it must unanimously agree on one incident of criminal conduct that meets all of the essential elements of the single charged offense beyond a reasonable doubt).

In both instances, McClain testified he identified a weapon in appellant's hand and feared for his life. However, in the latter instance, McClain did not state that appellant ever pointed the weapon at him or in his direction. The State counters that appellant's actions near the convenience store did not rise to the "level of engaging in conduct placing another in imminent danger of serious bodily injury because the firearm was never knowingly pointed at or in the direction of [McClain]."

A defendant, however, need not point a weapon at a complainant to show conduct threatening imminent bodily injury. *See De Leon v. State*, 865 S.W.2d 139, 142 (Tex. App.—Corpus Christi–Edinburg 1993, no pet.) ("The mere presence of a deadly weapon, under proper circumstances, can be enough to instill fear and threaten a person with bodily injury."); *Gaston v. State*, 672 S.W.2d 819, 821 (Tex. App.—Dallas 1983, no pet.)

14

(concluding that though "appellant did not point the shotgun at [the complainant] and "appellant never verbally threatened [the complainant]," "[i]t was the presence of the gun in appellant's hand that instilled fear in [the] complainant and made her feel threatened with bodily injury"); *see also Edgar v. State*, No. 07-18-00327-CR, 2020 WL 413666, at *3 (Tex. App.—Amarillo Jan. 24, 2020, no pet.) (mem. op., not designated for publication) (concluding that although the complainant "testified that throughout the incident, appellant did not point the shotgun at her, but held it by his side, aimed at the floor, and that appellant never verbally threatened her," "the accused need not necessarily point the weapon at the victim or verbally threaten him or her" for the State to prove threat of imminent bodily injury).

Appellant's actions near the Stripes—approaching McClain's vehicle with a gun by his side, which McClain testified prompted him to think "I'm going to die," especially in short temporal proximity after the first event where appellant pointed the gun at McClain and verbally threatened to shoot him—constituted evidence of conduct threatening imminent bodily injury. Because the State presented two scenarios that would have permitted the jury to convict appellant of the single charged offense of engaging in conduct that places another in imminent danger of serious bodily injury, we conclude the trial court erred in failing to issue an incident-specific unanimity instruction. *See Cosio*, 353 S.W.3d at 776; *Ansari v. State*, 511 S.W.3d 262, 265–66 (Tex. App.—San Antonio 2015, no pet.) (requiring an unanimity instruction in the jury charge when the State presented three instances of assault occurring in a short time span—the assault when the couple was alone in the car, the assault after the couple picked up a third-party, and the assault after all three returned home—but the charge provided for conviction on only

15

one instance). We must next determine whether appellant was egregiously harmed by the erroneous jury instruction. *See Ngo*, 175 S.W.3d at 750. For reasons discussed below, we conclude he was not.

### 1. Entire Jury Charge

First, we consider the entire jury charge. *See French*, 563 S.W.3d at 237; *Almanza*, 686 S.W.2d at 171. The jury charge makes passing reference to unanimity, stating: "It is the Presiding Juror's duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict . . . ." Such language does not instruct a jury that it must be unanimous as to the incident for which appellant would be held criminally responsible. *See Cosio*, 353 S.W.3d at 774 (concluding that boilerplate unanimity instruction did not rectify the error in failing to include an incident-specific unanimity instruction when such instruction was required based on the evidence); *Ngo*, 175 S.W.3d at 745 (providing that where "the word 'unanimously' appeared only in the 'boilerplate' section of the jury charge dealing with selection of the jury foreman," "the jury could well have believed that they need only be unanimous about their 'verdict' of guilty or not guilty"). Therefore, nothing in the jury charge itself militates the error, and this factor weighs in favor of a conclusion that appellant was egregiously harmed. *See Cosio*, 353 S.W.3d at 777.

### 2. Conduct of Counsel

We next consider whether and to what extent the State exacerbated the charge error. *See French*, 563 S.W.3d at 237; *Almanza*, 686 S.W.2d at 171. Here, the State in opening statements and closing arguments toggled between the two incidents, but the State never instructed jurors they could be non-unanimous with respect to the incidents

and still convict. *See Cosio*, 353 S.W.3d at 777 (holding that omission of unanimity instruction did not cause egregious harm where, among other things, the parties did not add to the charge error by telling the jury that it did not have to be unanimous about the specific instance of criminal conduct in rendering its verdict); *cf. Gomez v. State*, 498 S.W.3d 691, 698–700 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (concluding egregious harm where, among other things, the prosecutor's closing encouraged a non-unanimous verdict by stating: "If four of you think that oil incident is beyond a reasonable doubt and four of you think that bed incident is beyond a reasonable doubt and the other four think that some other incident was beyond a reasonable doubt, then we have proved our case"); *Clear v. State*, 76 S.W.3d 622, 624 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (concluding egregious harm where, among other things, the prosecutor misadvised the jurors that: "As long as we have proven to each and every one of you at least one of these manners, we are entitled to a guilty verdict. You don't all have to agree on which manner we've proven it to you, as long [as] we've proven one of these."). Accordingly, this factor does not support a conclusion that appellant was egregiously harmed. *See Cosio*, 353 S.W.3d at 777.

### 3. State of the Evidence

We now consider the evidence adduced at trial, and we note the similarities in the case before us as in the case before the Texas Court of Criminal Appeals in *Cosio. See id.* at 774–78. In *Cosio*, the Court determined Cosio was not egregiously harmed by the trial court's failure to give an incident-specific unanimity instruction although the "jury could have relied on separate incidents of criminal conduct, which constituted different offenses or separate units of prosecution, committed by Cosio to find him guilty." *Id*. at

17

774. As to this factor, the Court reasoned that though the complainant testified to separate instances of criminal conduct, Cosio's defense was "of the same character and strength across the board." The Court concluded that the jury's verdict supported the finding that the "jury was not persuaded that he did not commit the offenses or that there was any reasonable doubt." *Id.*

As in *Cosio*, the jury here was faced with separate versions of a repeated offense: as espoused by McClain and appellant, respectively; and appellant's defense challenged McClain's credibility. *See id.* at 774–77. Contrary to the dissent, we conclude, for reasons explained below, that appellant presented substantially the same defense for both offenses: appellant claims that he did not commit the offense of deadly conduct because he did not have a weapon in his hand during either incident. In the first incident, appellant specifically asserted he was at the stoplight with a weapon in plain view, having recently purchased the weapon and taken it out of its box. Appellant denied touching the weapon during his verbal exchange with McClain. McClain refuted appellant's testimony, arguing that appellant pulled up beside him at the stoplight, pointed a gun at him, and threatened to shoot him.[4] In the second incident, appellant denied he had the weapon in his hand when he approached McClain's vehicle near the convenience store. McClain testified that it appeared as if appellant had a gun in his hand when he neared his vehicle in front of the Stripes, and appellant's conduct left him thinking, "I'm going to die."

Appellant also challenged the credibility and believability of the opposing testimony presented. Appellant argued McClain, who was on federal probation at the time, was quick to call 9-1-1 to absolve himself of any liability after appellant had threatened to call

---

[4] McClain immediately called 9-1-1 and reiterated what had occurred to the 9-1-1 operator. His testimony at trial was near verbatim to what he told the operator.

police. McClain maintained he called 9-1-1 because he had just witnessed a crime. There were no other witnesses to the altercation.

Although, as the dissent observes, the State's evidence was not "of the same character and strength across the board," appellant's defense, premised only on appellant's version of events, was—and it is the latter, not former, which controls in *Cosio*. *See id*. at 777 ("Cosio's defense was that he did not commit any of the offenses and that there was reasonable doubt as to each of the four incidents because the [complainant] was not credible and the practical circumstances surrounding the incidents of criminal conduct did not corroborate [the complainant's] testimony. His defense was essentially of the same character and strength across the board.").

The jury returned a guilty verdict indicating that the jury was not persuaded by appellant's defense that he did not have a weapon in his hand during either incident—at the stoplight or near the convenience store. It is logical to suppose that the jury unanimously agreed that appellant committed both of the separate instances of criminal conduct and thus "highly likely" that the jury's verdict was unanimous. *See id.* at 778. Therefore, this factor does not weigh in favor of finding egregious harm.

### 4. Summary

When examining all of the factors to determine egregious harm, only the first factor supports reversal; the others do not. We conclude that egregious harm has not been shown and appellant was not denied a fair and impartial trial. *See id.* We overrule appellant's second issue.

## C.    Presumptions

By his third issue, appellant asserts that the trial court erred in failing to submit an instruction on the presumption in penal code § 22.05(c), and as such, "unconstitutionally shifted the burden of proof onto [appellant] by inferring two essential elements without the statutory protections in Tex[as] Penal Code [§] 2.05." *See* TEX. PENAL CODE ANN. §§ 2.05, 22.05(c).

A mandatory presumption compels the jury to find an essential element of the offense upon proof of a basic fact, and as consequence, mandatory presumptions are unconstitutional because they relieve the State of its constitutionally-required burden of proving guilt beyond a reasonable doubt. *Willis v. State*, 790 S.W.2d 307, 309 (Tex. Crim. App. 1990); *Clementson v. State*, 492 S.W.3d 802, 805 (Tex. App.—Amarillo 2016, pet. ref'd). In contrast, a permissive presumption allows, but does not require, the trier of fact to infer the elemental fact or ultimate fact from the predicate evidentiary fact. *Willis*, 790 S.W.2d at 309; *Clementson*, 492 S.W.3d at 805.

Texas Penal Code § 2.05(a)(2) provides that, when the penal code "establishes a presumption with respect to any fact" and there is sufficient evidence of the facts that give rise to the presumption, "the issue of the existence of the presumed fact must be submitted to the jury, unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact." TEX. PENAL CODE ANN. § 2.05(a)(1). If the existence of the presumed fact is submitted to the jury, the trial court shall

> charge the jury, in terms of the presumption and the specific element to which it applies, as follows:

20

(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

*Id.* § 2.05(a)(2). Where a court's jury charge contains presumption language, the trial court ameliorates any constitutional grievance by additionally providing a proper § 2.05 instruction. *Willis*, 790 S.W.2d at 309; *State v. Sandoval*, 842 S.W.2d 782, 788 (Tex. App.—Corpus Christi–Edinburg 1992, pet. ref'd) ("As long as § 2.05 is adequately incorporated into the court's charge, a presumption will be construed as permissive."); *Ross v. State*, 594 S.W.3d 566, 569 (Tex. App.—Amarillo 2019, no pet.) (providing the same).

At issue here is the deadly conduct statute, which states: "[a] person commits [the offense of deadly conduct] if he recklessly engages in conduct that places another in imminent danger of serious bodily injury," and "recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." TEX. PENAL CODE ANN. § 22.05(a), (c). Thus, the offense of deadly conduct contains a presumption—the fact giving rise to the presumption is that the actor knowingly pointed a firearm at another, and the presumed facts are the recklessness of the conduct and the danger to the victim. *See id.*; *Burd v. State*, 404 S.W.3d 64, 72 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Neely v. State*, 193 S.W.3d

21

685, 686 (Tex. App.—Waco 2006, no pet.); *Webber v. State*, 29 S.W.3d 226, 230 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Therefore, where the State charges the offense of deadly conduct, a trial court is required to instruct the jury on the effect of the presumption as mandated by § 2.05(a)(2). *See Willis*, 790 S.W.2d at 309; *Burd*, 404 S.W.3d at 72; *Neely*, 193 S.W.3d at 685; *Webber*, 29 S.W.3d at 230.

Here, the jury charge contained the statement: "Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." TEX. PENAL CODE ANN. § 22.05(c). However, the trial court did not instruct the jury on the effect of the presumption as mandated by § 2.05(a)(2). For example, the charge did not instruct the jury that, to apply the presumption, it must find beyond a reasonable doubt that appellant knowingly pointed the gun at or in the direction of another. *See id.* § 2.05(a)(2)(D). Therefore, the trial court erred, and our analysis shifts to whether appellant suffered egregious harm. *See Willis*, 790 S.W.2d at 309; *Ross*, 594 S.W.3d at 570 ("Failure to include a [§] 2.05(a)(2) instruction along with an instruction on a presumed fact thus gives rise to both statutory and constitutional error."); *Neely*, 193 S.W.3d at 687 ("The State agrees that an accompanying [§] 2.05(a)(2) instruction was required; without it, the charge's [§] 22.05(c) instruction is an unconstitutional, mandatory presumption."); *see also Barros v. State*, 661 S.W.2d 337, 342 (Tex. App.—Corpus Christi–Edinburg 1983, no pet.) ("Where the court charges on a statutory presumption, a specific charge or instruction in the language of § 2.05(a)(2)(A)–(D) is *mandatory* and there is fundamental error if it is not given.").

22

### 1.     Entire Jury Charge

While the jury charge here contains general language that appellant is presumed innocent and that the State must prove every element of the offense beyond a reasonable doubt, this language alone is not sufficient to remove harm because the jury could interpret the instructions as indicating that although intent must be shown beyond a reasonable doubt, the proof of the act, as the predicative fact for the presumption of intent, constituted proof beyond a reasonable doubt unless the defendant persuaded the jury otherwise. *See Hollander v. State*, 414 S.W.3d 746, 750 (Tex. Crim. App. 2013) (holding that while the jury charge "*did* instruct the jury appropriately with respect to the State's *general* burden to prove all of the constituent elements of the offense beyond a reasonable doubt," "[s]uch a general instruction fails to educate the jurors with respect to the level of confidence they must have in the verity of the predicate facts before they may rely on the presumption to convict"); *Webber*, 29 S.W.3d at 236; *Barros*, 661 S.W.2d at 342. Therefore, the jury charge as a whole does not remedy or lessen the harm suffered.

### 2.     Conduct of Counsel

Moreover, nothing that the parties said or did during the course of trial tended to remedy the deficiency. *See Hollander*, 414 S.W.3d at 750; *Almanza*, 686 S.W.2d at 171. During voir dire, the State asserted:

> Now, the judge has told us the offense—what the defendant is accused of is an offense called "deadly conduct," "deadly conduct." And the law says that deadly conduct is when the defendant on or about a certain day here in Cameron County did then and there recklessly place another person in imminent danger of serious bodily injury. Okay? It's when one person does something to another person recklessly that puts them in serious—in danger of serious bodily injury. Okay? Does that make sense to everybody? Okay.

23

> The law goes on to say that recklessness and danger are presumed if the actor, which is the defendant, knowingly pointed a firearm at or in the direction of another person whether or not the actor knew or believed that the firearm was loaded. Okay? The law says if a person puts another person in fear of serious bodily injury, okay, and *if they point a firearm at them, that danger is presumed.*

(Emphasis added). No mention was made of the burden of proof with respect to the presumption nor was any mention made that the presumption is permissive rather than mandatory. *See Hollander*, 414 S.W.3d at 750. During opening statements, there was likewise no mention of the level of confidence by which the jury must believe the predicate facts or that the presumption is not mandatory. *See id.* Finally, neither party's closing arguments articulated the standard of proof with respect to the presumption or the nature of the presumption as permissive. *See id.*

### 3. State of the Evidence

We now consider the evidence adduced at trial. *See Villarreal*, 453 S.W.3d at 435–36; *Almanza*, 686 S.W.2d at 171. "In an egregious-harm analysis, the question is not simply whether, when viewed in the light most favorable to the verdict, the jury *could* rationally have found predicate facts to a level of confidence beyond a reasonable doubt." *Hollander*, 414 S.W.3d at 751*.* "[A] reviewing court must evaluate the likelihood, considering the record as a whole, that a properly instructed jury *would* have found the predicate facts to the requisite level of confidence." *Id*.; *see Villarreal*, 453 S.W.3d at 436 (providing that an appellate court must "properly consider the plausibility of the evidence raising the defense"). In other words, where the great weight of the evidence supports the facts giving rise to the presumption, egregious harm has not occurred. *See Neely*, 193 S.W.3d at 687–88; *Garrett v. State*, 159 S.W.3d 717, 721 (Tex. App.—Fort Worth 2005), *aff'd*, 220 S.W.3d 926 (Tex. Crim. App. 2007).

Having discussed the evidence *infra* and considered the strength of the evidence as a whole, as well as the previous factors, we conclude that the absence of a presumption instruction did not affect the very basis of the case, deprive appellant of a valuable right, or vitally affect any defensive theory. *See Gonzalez*, 610 S.W.3d at 27; *see also Polk v. State*, No. 13-18-00347-CR, 2019 WL 3721345, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 8, 2019, pet. ref'd) (mem. op., not designated for publication) (concluding that the appellant had not sustained egregious harm as a result of the omission of an instruction on the presumption where "the only evidence supporting that defense was his own testimony and it was contradicted by all of the other evidence in the record"). Although the dissent points to appellant's uncontroverted testimony that his gun was not loaded, "[the factfinder] is entitled to believe or disbelieve all or part of [appellant's] testimony—even if that testimony is uncontroverted." *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Cim. App. 2010); *see also Canales v. State*, No. 13-11-00303-CR, 2012 WL 5377900, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 1, 2012, pet. ref'd) (mem. op., not designated for publication). Moreover, though one of the disputed issues at trial pertained to the presumptive fact—i.e., whether appellant was reckless and placed McClain in danger by knowingly pointing a firearm at or in McClain's direction, "mere existence of conflicting testimony surrounding a contested issue does not necessarily trigger a finding of egregious harm." *See Villarreal*, 453 S.W.3d at 436. It would be rational, on a record like this, to conclude that a properly instructed jury *would* have found the predicate facts to the requisite level of confidence.[5] *See Hollander*, 414 S.W.3d at

---

[5] The dissent concludes that the charge errors cumulatively caused the appellant egregious harm. Under the cumulative harm doctrine, the mere existence of multiple errors does not warrant reversal unless the errors operated in concert to undermine the fundamental fairness of the proceedings. *See Estrada v.*

751; *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (providing that egregious harm is a "high and difficult standard" to meet). Accordingly, we overrule appellant's third issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Dissenting Memorandum Opinion
by Chief Justice Contreras.

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
3rd day of June, 2021.

---

*State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010). Having reviewed the entire record, we cannot conclude that the two charge errors considered cumulatively rise to the level of rendering appellant's trial fundamentally unfair. *See Estrada*, 313 S.W.3d at 311; *see, e.g.*, *Hernandez-Silva v. State*, No. 03-19-00219-CR, 2020 WL 4726632, at *5 (Tex. App.—Austin Aug. 14, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding the appellant did not suffer egregious harm even when considering the cumulative effect of three charge errors); *Garcia v. State*, No. 01-19-00081-CR, 2020 WL 3969671, at *5 (Tex. App.—Houston [1st Dist.] July 14, 2020, pet. ref'd) (mem. op., not designated for publication) (same).

26