

# NUMBER 13-21-00266-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JAMES LEWIS COQUAT,**                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                             **Appellee.**

---

### On appeal from the 156th District Court
### of Live Oak County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Memorandum Opinion by Justice Hinojosa

A jury convicted appellant James Lewis Coquat of continuous sexual abuse of a child, a first-degree felony.[1] *See* TEX. PENAL CODE ANN. § 21.02. Appellant elected for the

---

[1] The four-count indictment also charged appellant with two counts of sexual assault of a child and

trial court to assess punishment, and it sentenced appellant to fifty years' incarceration in the Texas Department of Criminal Justice Correctional Institutions Division (TDCJ). *See id.* § 12.32. By seven issues, appellant argues the trial court erred by: (1–5) admitting extraneous offense evidence under Rule 404(b); (6) misapplying the Rule 403 balancing test in admitting the extraneous offenses; and (7) improperly instructing the jury on character conformity "in violation of [Rule] 404(b)." We affirm.

## I.  BACKGROUND

Trial commenced on June 22, 2021. We summarize the relevant testimony.

## A.  The Charged Offense

Count One in the indictment alleged that between January 2009 and January 2015, appellant, then over the age of seventeen, committed two or more acts of sexual abuse against a child under the age of fourteen, namely: with intent to gratify his sexual desire, engaged in sexual contact with Hannah,[2] a child younger than fourteen years of age, by touching, digitally penetrating, and placing his mouth on Hannah's genitals.

Hannah testified that she was born in 2002 and is appellant's daughter. She stated that she lived at home with appellant, her mother, and her two brothers. Hannah noted that appellant had sexually abused her throughout her childhood. She depicted multiple instances of abuse during which appellant would perform oral sex on her. She specified that the abuse occurred at home and at appellant's work at the family's Aransas Pass

---

indecency with a child by contact—each a lesser-included offense of continuous sexual abuse of a child. After the jury found appellant guilty of continuous sexual abuse of a child, the State filed a motion to dismiss the remaining counts, which the trial court granted.

[2] To preserve the privacy of the minor, we identify certain parties by pseudonyms. *See* TEX. R. APP. P. 9.8.

ranch. At the ranch, appellant would take Hannah into a barn, stack and arrange hay into "a fort," enter the fort with Hannah, and proceed to perform oral sex on her or insert his fingers into her genitalia. On other occasions, under the guise of cleaning Hannah, appellant would lead his daughter into the bathroom and pour water on and rub her genitalia. In some cases, he would sit with Hannah on the couch and "rub on [her] and touch . . . [her] breasts and . . . [her] butt and [her] female genitalia." Hannah testified that while at first the abuse did not occur "too often," "as [she] got older[,] it got more often to where it was almost every day or every other day."

When she was fourteen years old, during a sleepover at her friend's house, Hannah informed her friend that appellant was sexually abusing her. The friend related Hannah's outcry to the friend's mother who, in turn, contacted the Live Oak Sheriff's Department, which assigned Investigator Daniel Caddell to the case. Investigator Caddell testified that he interviewed Hannah, appellant, and Hannah's brothers during his investigation. He stated that as the investigation progressed, multiple witnesses came forward for interviews. Those witnesses included, among others, Sophie—Hannah's older half-sister from appellant's first marriage—and four of appellant's female first-cousins: (1) Luna; (2) Skylar; (3) Ruby; and (4) Lexi.

## B.    Extraneous Offense Evidence

The State informed appellant before trial that it would seek to introduce extraneous offense evidence from multiple witnesses under Rule 404(b) of the rules of evidence and Article 38.37 of the code of criminal procedure. *See* TEX. R. EVID. 404(b); TEX. CODE CRIM. PROC. ANN. art. 38.37. In accordance with Article 38.37, a hearing was held outside the

3

presence of the jury to determine whether the jury could find the extraneous offenses beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37. Investigator Caddell testified at the hearing and described what each of the extraneous offense witnesses would claim. Following Investigator Caddell's testimony, the trial court ruled that the extraneous offense evidence would be admissible under Rule 404(b). *See* TEX. R. EVID. 404(b). The trial court restated its ruling before the extraneous offense witnesses testified on the second day of trial.

### 1. Sophie's Testimony

Sophie testified that at the time of Hannah's outcry, she was then living at a ranch in Aransas Pass and running a business there boarding horses, giving horseback riding lessons, leading horseback rides, and putting on "pony painting parties" for girls aged about two to sixteen. After Hannah's outcry, appellant asked Sophie if he could move to the ranch, and she agreed. Sophie testified that appellant would assist with various repairs and improvements during his stay at the ranch. She stated that things were ok when appellant arrived at the ranch but that it was somewhat "awkward" because appellant asked Sophie if he had ever done anything to her. Sophie noted that in response to appellant's question, she "started questioning if [their] relationship had been . . . normal or not."

At some point, Sophie noticed that appellant "started getting a little too close to [her] clients." She testified that appellant would sit and watch her clients without saying anything and that he "liked to hug them really tightly for an abnormally long period of time, like a minute." Sophie stated that it "was uncomfortable" for her, and her clients would

4

approach and tell her "that they were uncomfortable with how [appellant] was acting, as well." Sophie told appellant at least three times not to talk to or touch her clients, but he "ignored" her. Eventually, Sophie asked appellant to leave the ranch.

Sophie testified that she began receiving professional counseling in 2018 and recognized that, in fact, her relationship with her father while growing up "was not normal." She noted that appellant would give her "showers every evening and . . . put his hands all over [her] body, in between [her] legs." Sophie testified that she told appellant not to shower her anymore when she was about thirteen years old and that the nightly showers "had been happening for years before that." Sophie also described how appellant would tickle her for extended periods and, sometimes, his "hands would go up into [her] crotch." She further testified that, every morning in his truck on the way to school, appellant "would stick a hand . . . in between [her] leg[s] and his hand was up inside [her] crotch." Sophie specified that by "crotch" she was referring to her vagina, and that when appellant's hands were between her legs during the showers and car rides, his finger would be inside her vagina. Finally, Sophie testified that, on one occasion, she was "walking down the hall going to [her] room and [appellant was] in his bedroom completely naked standing in the doorway staring at [her]."

### 2. Luna's Testimony

Luna testified that she is ten years younger than appellant. Luna noted that her mother and appellant's mother are sisters, that her mother was one of six children, and that, when she was younger, the entire extended family would gather at her grandmother's ranch for holidays and various occasions. She recounted an instance

when she was about ten years old where she and some other cousins were climbing a fig tree with appellant. Appellant "was laying on his side" and gave the younger cousins an "uncomfortable look" that she described as "lustful." One of the cousins looked at appellant and said, "That's gross. You're disgusting." All the cousins then "scattered."

### 3. Skylar's Testimony

Skylar testified that she is ten years younger than appellant. She stated that appellant is the oldest cousin and that the younger cousins looked up to him. Skylar testified that when she was about eight or nine years old, appellant was asked to run an errand off the ranch, and he asked her to join him "so he didn't have to travel alone." While riding in his truck, appellant asked Skylar to move closer to him. When Skylar did, appellant "started fondling [her]." Skylar specified that appellant "had his hands inside [her] underwear and he was touching [her] genitals with his fingertips." On another occasion, also when Skylar was eight or nine years old, appellant visited Skylar's family in Houston and took Skylar into a bedroom. While inside, the two laid down on the bed, appellant covered Skylar with the bed covers, and he again "reach[ed] inside [Skylar's] underwear and rub[ed] [her genitals] with his fingers." Skylar noted that when appellant subsequently "went to rol[l] over on top of [her]," she had the realization that she needed to "get up" and "get away." She testified that she never "put [her]self in that position again."

### 4. Ruby's Testimony

Ruby testified that she is fourteen years younger than appellant. She stated that when she was four or five years old, appellant would fondle her at her grandmother's ranch. She testified that, on "at least a handful of times," appellant would take her into a

6

bedroom for a nap. Rather than napping, however, appellant "would rub [her] vagina and labia. He would touch himself, then touch [her]." Ruby recalled seeing appellant's penis during these instances of abuse. Ruby also noted that all the cousins would often swim in the river near her grandmother's ranch. She testified that because she was young and short, she would need to hold onto somebody while swimming in the river, and usually hung onto appellant. Ruby stated that when hanging on to appellant, he would have her "stroke his penis . . . under [the] water."

### 5. Lexi's Testimony

Lexi testified that she is nine years younger than appellant. She stated that they grew up nearby each other but on separate ranches and that their families would often spend time together. Lexi testified that at some point between first and third grade, appellant started touching her inappropriately in the barn and while swimming in a reservoir. She described how appellant would stack hay into a fort, ask her if she "want[ed] to play nasty," and proceed to fondle her. Lexi noted that on certain occasions in the fort, appellant would anally penetrate her with various objects, including bobby pins and straws of hay, and in other instances, he would have Lexi touch him "manually and occasionally orally." Lexi testified that while the two were swimming in the reservoir, appellant would touch her vagina under the water and have her touch his penis.

## C. Verdict and Sentence

On June 25, 2021, the jury found appellant guilty of continuous sexual abuse of Hannah. On August 5, 2021, the trial court sentenced appellant to fifty years' incarceration in TDCJ. This appeal followed.

7

## II.     CHARACTER EVIDENCE

By his first five issues, appellant argues that the trial court erred by admitting the testimony of Sophie, Luna, Skylar, Ruby, and Lexi under Rule 404(b). The State argues that the extraneous evidence was otherwise proper under Article 38.37, so appellant's extraneous offense arguments are without merit.

### A.     Standard of Review & Applicable Law

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020); *Patterson v. State*, 606 S.W.3d 3, 33 (Tex. App.—Corpus Christi–Edinburg 2020, pet. ref'd). A trial court abuses its discretion when its decision lies outside the "zone of reasonable disagreement." *Wells*, 611 S.W.3d at 427; *Patterson*, 606 S.W.3d at 33.

Generally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). However, when the defendant is tried for committing a sexual offense against a child that was under the age of seventeen at the time of the offense, the State may introduce evidence, notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, that the defendant has committed separate sexual offenses against other children "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b); *see Jeansonne v. State*, 624 S.W.3d 78, 95 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (noting that Article 38.37 "supersedes" Rule 404). To introduce such evidence, the trial

8

court must first hold a hearing outside the presence of the jury and find that the evidence in question will adequately support a jury finding beyond a reasonable doubt that the defendant committed the separate offense, and the State must give notice of its intent to introduce evidence under Article 38.37 to the defendant at least thirty days before trial. TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 2-a, 3.

We will reject "a claim of reversible error on direct appeal . . . if the trial court's ruling is correct 'on any theory of law applicable to the case' even if 'the trial court did not purport to rely on that theory' and the prevailing party did not explicitly raise the theory." *State v. Castanedanieto*, 607 S.W.3d 315, 327 (Tex. Crim. App. 2020) (quoting *State v. Esparza*, 413 S.W.3d 81, 85–86 (Tex. Crim. App. 2013)).

## B.    Analysis

In his opening arguments at trial, appellant's defense counsel spoke of a number of "stories": "[appellant's] story; the State's story; [and] the witnesses' stories." Defense counsel told the "story" of appellant's grandparents who owned a large ranch. When the grandparents died, the ranch was split into six separate properties, which caused "dissension" within the extended family. Defense counsel spoke of Hannah's "story" as well; a story of a young girl who was upset that her father wouldn't allow her to have sleepovers with her friends, to ride with her boyfriend to school, or to "have the kind of fun life she thinks a teenager ought to have." Defense counsel stated that after Hannah made the accusation, and after appellant was forced out of her home, Hannah "[got] what she want[ed]." Defense counsel concluded his opening statement, and the State requested to approach the bench. There, the State argued that trial counsel's opening statement

9

opened the door for extraneous offense evidence to rebut what the State considered a fabrication defense. The trial court noted that it would wait until the State wanted to offer the relevant extraneous offense testimony and would then address the issue outside the presence of the jury. Ultimately, the Article 38.37 hearing with Investigator Caddell resulted, and the trial court ruled the evidence was all admissible under Rule 404(b).

Appellant's first five arguments on appeal center exclusively on the trial court's ruling that appellant's trial counsel's opening arguments opened the door to the admission of extraneous offense evidence under Rule 404(b)(2) to rebut appellant's defensive theory. *See* TEX. R. EVID. 404(b)(2) (non-exhaustive list of permitted uses of extraneous matter evidence). But we need not assess whether the extraneous evidence was proper under Rule 404(b)(2) because it was proper under Article 38.37. *See Castanedanieto*, 607 S.W.3d at 327; *Jeansonne*, 624 S.W.3d at 95.

In compliance with Article 38.37, the trial court held a hearing outside the presence of the jury to determine whether the extraneous offense testimony would support a finding by the jury that appellant previously committed separate sexual offenses against children. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a. As detailed above, the trial court was informed that Sophie, Skylar, Ruby, and Lexi would each testify that they were sexually abused as minors, and that appellant was an adult during the abuse. That evidence sufficed to support a finding under Article 38.37, § 2-a. *See id.*; *Deggs v. State*, 646 S.W.3d 916, 924 (Tex. App.—Waco 2022, pet. ref'd) ("An alleged victim's testimony standing alone without corroboration can be, and was in this instance, sufficient to prove an offense [under Article 38.37 §2-a(1)]."). Arguably, Luna's testimony regarding the fig

10

tree affair did not alone prove an extraneous offense under Article 38.37. But appellant lumps his 404(b) issues together and does not argue that Luna's testimony would have itself violated Rule 404(b) or Article 38.37 or constituted reversible error, so we do not address that contention. *See* TEX. R. APP. P. 38.1(i) ("The [appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."), 44.2(b) (setting out the non-constitutional error standard in criminal cases). Finally, while appellant never objected to a purported failure of notice of the State's intent to use extraneous offense evidence, we note that the State filed its final amended notice of intent to use the extraneous offense evidence on May 19, 2021— over thirty days before trial commenced. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3 (notice requirements).

In sum, the proper procedures to admit extraneous offense evidence under Article 38.37 §§ 2 and 3 were followed: the trial court held a hearing outside the presence of the jury and concluded that the evidence could support a jury's finding that appellant committed prior sex offenses against multiple minors, and the State informed appellant over thirty days before trial of its intent to use the relevant extraneous offense evidence for character conforming purposes. The evidence was thus proper under Article 38.37. *See id.*; *Castanedanieto*, 607 S.W.3d at 327.

Accordingly, we overrule appellant's first five issues.

### III.    RULE 403(b)

By his sixth issue, appellant contends that the trial court erred "in applying [the Rule] 403 balancing test because it is clear that the probative value of all of the extraneous

evidence was substantially outweighed by the danger of unfair prejudice from th[e] evidence." *See* TEX. R. EVID. 403. The State argues that the Rule 403 balancing test does not apply to evidence admitted under Article 38.37.

Relevant evidence is admissible unless otherwise proscribed per Rule 402. *See id.* R. 401, 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id.* R. 401. Admissible evidence may nevertheless be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Id.* R. 403. "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g). Contrary to the State's contention, "[t]he admission of evidence pursuant to Article 38.37, [§] 2(b) is limited by Rule 403's balancing test." *Deggs*, 646 S.W.3d at 925.

However, to preserve a complaint for appellate review, a party must make a timely objection stating the specific grounds for the ruling sought, and the trial court must rule on that objection. TEX. R. APP. P. 33.1(a); *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). And a "point of error on appeal must comport with the objection made at trial." *Yazdchi*, 428 S.W.3d at 844; *see Berry v. State*, 233 S.W.3d 847, 857 (Tex. Crim. App. 2007) (holding that a Rule 403 objection was not preserved for review where only a Rule 404 objection was raised at trial). In this case, the record reflects that appellant broadly objected to the extraneous offense evidence as improper only under Rule 404(b)

12

and Article 38.37. *See* TEX. R. EVID. 404(b); TEX. CODE CRIM. PROC. ANN. art. 38.37. We thus conclude that appellant's Rule 403 argument as to "all of the extraneous evidence" was not preserved for appellate review. *See* TEX. R. APP. P. 33.1(a); *Yazdchi*, 428 S.W.3d at 844; *Berry*, 233 S.W.3d at 857.

The record does reflect two instances where appellant objected to specific testimony under Rule 403, which the trial court overruled: first when the State asked Investigator Caddell whether appellant was older or younger than Luna and then when it asked the same about Skylar. On appeal, appellant does not specify how merely asking whether appellant was older or younger than Luna and Skylar was unduly prejudicial and resulted in reversible error. *See* TEX. R. APP. P. 38.1(i), 44.2(b); *Yazdchi*, 428 S.W.3d at 844. Nevertheless, even if appellant preserved his claim as to the two questions, and even assuming the trial court erred by overruling appellant's objections thereto, we conclude the alleged error did not constitute reversible error.

Appellate courts disregard all nonconstitutional errors that did not affect an appellant's "substantial rights." TEX. R. APP. P. 44.2; *see Celis v. State*, 354 S.W.3d 7, 38 (Tex. App.—Corpus Christi–Edinburg 2011) ("Generally, if the trial court's ruling 'merely offends the rules of evidence,' the erroneous admission or exclusion of evidence is nonconstitutional error." (quoting *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.— Houston [1st Dist.] 2007, pet. ref'd))), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013). "Substantial rights are not affected by the erroneous admission or exclusion of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Celis*, 354 S.W.3d at 38 (cleaned

13

up); *see Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003). In making that determination, we consider factors such as testimony, overwhelming evidence of guilt, the jury charge, the theories of the State and defense, closing arguments, whether the erroneously admitted evidence was cumulative, whether the evidence was elicited from an expert, and whether the State emphasized the evidence. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *Bagheri*, 119 S.W.3d at 763; *Motilla v. State*, 78 S.W.3d 352, 356–57 (Tex. Crim. App. 2002). After considering those factors in the context of the whole record, including over seven hundred pages of trial testimony, we conclude that admitting evidence that Luna and Skylar were younger than appellant did not constitute reversible error. *See* TEX. R. APP. P. 44.2(b); *Gonzalez*, 544 S.W.3d 373.

We thus overrule appellant's sixth issue.

## IV. JURY CHARGE

By his seventh and final issue, appellant argues the trial court erred by "overruling appellant's objection to the jury charge with the end result being that the jury was improperly instructed in violation of [Rule] 404([b]) that they could consider all of the extraneous offense evidence to determine if appellant acted in conformity with his character." Appellant's contention arises from the trial court's rulings admitting some evidence under Rule 404(b), which disallows evidence to be considered for purposes of character conformity, and other evidence under Article 38.37, which allows for evidence to be so considered.

### A. Standard of Review & Applicable Law

The jury charge must "distinctly set[] forth the law applicable to the case." TEX.

CODE CRIM. PROC. ANN. art. 36.14. In analyzing a jury charge issue, we first determine whether error exists. *Hernandez v. State*, 533 S.W.3d 472, 481 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) (citing *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on reh'g)). If we find error, then we consider whether the error was harmful under the appropriate standard. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza*, 686 S.W.2d at 171). If there is error and the defendant preserved the alleged error by objecting to the jury charge at trial, then we must reverse if we find it caused the defendant "some harm." *Jordan*, 593 S.W.3d at 346; *Almanza*, 686 S.W.2d at 171.

As noted above, under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). But, under circumstances relevant here, Rule 404 is superseded by Article 38.37 of the code of criminal procedure, which states that in certain criminal prosecutions for sex offenses against children, evidence of a separate sex offense of a minor is admissible "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b); *see Jeansonne*, 624 S.W.3d at 95.

## B.    Analysis

In this case, appellant was charged with continuous sexual abuse of a child, an offense subject to Article 38.37. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(a)(1)(A). As previously noted, all of the extraneous matter evidence complained of on appeal was

admissible under § 2 of the statute for character conforming purposes. *See id.* art. 38.37,

§ 2(a)(1). The jury charge in this case read in relevant part as follows:

> The Defendant is on trial solely on the charges contained in the indictment. However, evidence of extraneous crimes, wrongs, or acts committed by the Defendant may be admitted for certain limited purposes.
>
> You are instructed that if there is any testimony before you in this case regarding the defendant having committed offenses, wrongs, or bad acts, if any, other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, wrongs[,] or bad acts, and even then you may only consider the same for the following purposes:
>
> 1. for its bearing on the state of mind of the defendant and the child, [Hannah]; or,
>
> 2. for its bearing on the previous and subsequent relationship between the defendant and the child, [Hannah]; or,
>
> 3. for its bearing on any relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant; or,
>
> 4. to determine the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident.

These instructions fully comply with Article 38.37. The trial court explained the purposes for which the jury could consider the extraneous offense evidence and that the jury was required to find that appellant committed the extraneous offenses beyond a reasonable doubt before considering the evidence for the allowable purposes set out in Article 38.37. *See id.* § 2(b); *see also Doss v. State*, No. 05-21-00533-CR, 2022 WL 3040668, at *5 (Tex. App.—Dallas Aug. 2, 2022, no pet. h.) (mem. op., not designated for publication) (holding that the charged offense was subject to Article 38.37 and, thus, a jury charge similar to the one in this case was proper); *Price v. State*, No. 05-18-00243-CR, 2019 WL

2223600, at *5 n.4 (Tex. App.—Dallas May 23, 2019, pet. ref'd) (mem. op., not designated for publication) (same). We thus conclude that the trial court did not err in instructing the jury with respect to the extraneous offense testimony.

Because we conclude that all of the complained-of testimony was admissible under Article 38.37 and that the trial court properly instructed the jury under the statute, we do not conduct a harm analysis. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015) ("Because we conclude that the charge was not erroneous in this case, we do not conduct a harm analysis.").

We overrule appellant's seventh issue.

## V.    CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
30th day of August, 2022.

17